No. 116,635

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

AARON JEROME GREEN,
*Appellant*.

SYLLABUS BY THE COURT

1.

Where the party challenging a jury instruction on appeal failed to object below, the clearly erroneous standard of review applies. The clearly erroneous standard is a two-step review that requires an appellate court to first determine whether the instructions were legally and factually appropriate, employing an unlimited review of the entire record. If error is found, the defendant must firmly convince the court the jury would have reached a different result without the error.

2.

A jury instruction is legally appropriate if it fairly and accurately states the applicable law.

3.

The use of PIK instructions, while not mandatory, is strongly recommended. The pattern instructions have been developed by a knowledgeable committee to bring accuracy, clarity, and uniformity to jury instructions. A jury instruction may depart from the PIK instruction where legally appropriate.

1

**4.**

The phrases "with a deadly weapon" and "in any manner whereby great bodily harm, disfigurement or death can be inflicted" as contained in PIK Crim. 4th 54.310 are synonymous.

**5.**

The aggravated form of simple battery contained in K.S.A. 2017 Supp. 21-5413(a)(2) is aggravated battery contained in K.S.A. 2017 Supp. 21-5413(b)(1)(C).

**6.**

A jury instruction for aggravated battery under K.S.A. 2017 Supp. 21-5413(b)(1)(C) is legally appropriate when it states, in relevant part, that the defendant knowingly caused physical contact with the victim in a rude, insulting, or angry manner and in any manner whereby great bodily harm, disfigurement, or death can be inflicted.

**7.**

A lesser included offense is, in relevant part, a lesser degree of the same crime or a crime where all elements of the lesser crime are identical to some of the elements of the crime charged. A lesser included offense jury instruction must be given when there is some evidence, emanating from whatever source and proffered by whichever party, that would reasonably justify a conviction of some lesser included crime. To determine whether a lesser included offense jury instruction should have been given, an appellate court views the evidence in a light most favorable to the defendant. A district court does not err in failing to give a lesser included offense jury instruction on a crime which is unsupported by the evidence in that particular case.

**8.**

A court's duty to instruct on a lesser included offense is not foreclosed or excused just because the lesser included offense may be inconsistent with the defendant's theory

of defense. Moreover, the evidence which would support a conviction on a lesser included offense is not restricted to that which was proffered by the defense; it can include evidence presented by the State as well.

9.

Reckless aggravated battery under K.S.A. 2017 Supp. 21-5413(b)(2)(B) is a lesser included offense of knowing aggravated battery under K.S.A. 2017 Supp. 21-5413(b)(1)(C) because it is a lesser degree of the same crime.

10.

Generally, a defendant cannot complain on appeal about a claimed error that was invited. The invited error doctrine applies only when the party fails to object *and* invites the error, unless the error is structural. The invited error doctrine applies when a defendant actively pursues what is later argued to be error, such as when the defendant submits a proposed jury instruction.

11.

The burden of proof jury instruction given by the district court, which mirrors the language contained in PIK Crim. 4th 51.010, was legally appropriate.

Appeal from Saline District Court; JARED B. JOHNSON, judge. Opinion filed May 18, 2018. Affirmed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Anna M. Jumpponen*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., PIERRON and POWELL, JJ.

POWELL, J.: Aaron Jerome Green was convicted by a jury of his peers of one count of aggravated battery, two counts of simple battery, one count of criminal damage to property, and one count of violation of a protective order. Green now appeals, arguing the district court improperly instructed the jury in three instances, all of which require reversal of his convictions. Green also claims the district court improperly sentenced him by including in his criminal history prior convictions which had not been proven to the jury beyond a reasonable doubt. For reasons more fully explained below, we disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Cherie Adkins was dating Green but had a no-contact order against him. Despite the no-contact order, Adkins invited Green to have dinner with her and her cousin William Joseph (B.J.) Russell at her home in Salina, Kansas, on September 19, 2015. Around 5 or 6 p.m., Russell and Adkins began drinking while Adkins prepared dinner. Adkins testified Green came over to her house later and he drank some beers or whiskey that night. Russell testified that he was drinking whiskey pretty heavily and estimated he had had about a half liter of whiskey by the time Green arrived about two hours later. Russell admitted that due to his intoxication he did not remember a lot about what happened that night.

After dinner, the three went over to a friend's house. During the visit, Adkins promised the friend's niece that she would bring her some toys she had at her house. The group did not stay at the friend's house very long because Green got into an argument with the friend. Green appeared irritated when they left and then became more irritated after they briefly stopped at a second friend's home. At the second stop, only Green went inside; Adkins and Russell remained in her car. Russell was pretty inebriated and may

4

have passed out. Russell stated that he did not go into the first home and that he slept through most, if not all, of the car ride.

After the second stop, the group returned to Adkins' house. Adkins and Green started arguing, and Russell woke up and tried to get the two to calm down. Russell and Green then went into Adkins' bedroom to talk. At that point, Adkins left to take the toys to her friend's niece and returned home about five minutes later. When Adkins returned home, Green was outside the front of her house. After Adkins got out of her car, Green began yelling at her because Russell had brought a knife into the bedroom where they were talking. Green pinned Adkins against the car, choked her to the point that she almost passed out, and caused her to fall. Green then pulled Adkins up by the back of her shirt and led her into the house and down a hallway leading to the bedrooms. Green kept his hands on Adkins' back and said he wanted her to tell Russell to leave.

As the two walked down the hallway, Green pushed Adkins into a bedroom door or doorjamb. The impact caused a cut above her right eyebrow which began to bleed. Green then allowed Adkins to wash the blood off in the bathroom. After Adkins washed her face, Green pushed her into the bedroom where Russell was sleeping. Adkins saw a knife on the bedroom floor, woke up Russell, asked him about the knife, and told him he had to leave. Russell seemed disoriented but was able to stand up on his own. The three then left the bedroom: Russell first, then Adkins, and then Green. Russell and Green were arguing back and forth about the cut on Adkins' face and the fact that Russell had brought a knife into the bedroom. Adkins put herself between the two men, with a hand on each man's chest, trying to keep them apart. At one point, Adkins told Russell to get into her car, so he left the house. She told Green she would take Russell home and then come back to talk with him about what had happened.

Before Adkins could take Russell home, however, Russell came back into the house with a broomstick-like stick, and Green and Russell again started to argue. Adkins

5

testified that Russell merely held the stick in his hands and did not swing the stick during the altercation. Russell testified that he went back into the house with the stick because he could hear Adkins and Green arguing. Russell stated the altercation escalated after he saw the blood on Adkins and he realized that something serious had happened between Adkins and Green.

During the second altercation, the three moved from the hallway to the living and dining room area. At one point, Green pushed Adkins away and she landed on the couch. According to Adkins, Green went after Russell holding a bottle in one hand and a knife in the other. Adkins did not know when Green picked up the knife. Adkins testified that Green picked up Russell and threw him into the wall, punched Russell with his fist, and then hit him across the face with the bottle. The impact of the bottle knocked Russell out and caused him to bleed. On cross-examination, Adkins confirmed that she knew Green hit Russell with the bottle but was not sure whether Green had hit Russell with his left hand first. Adkins had to pull Green off Russell and told him to stop. Green walked out a few moments later but then returned and shouted at Russell, "Why shouldn't I?" while holding the knife in his hand. Green then stabbed the wall with the knife, breaking the knife and leaving about a 2-inch hole in the wall.

Green then walked outside, and Adkins told Russell to call 911 because her phone had been broken during the altercation. Adkins heard Russell ask for help from 911, but he must have disconnected or hung up because she heard the 911 dispatcher call the phone back a short time later. Green came back into the house, and Adkins and Green started talking. Adkins could tell Green was still angry, and Green kept looking out the front door. At some point Russell left the house through the back door. Adkins testified that she thought Green realized that someone had called 911 because the police started shining lights on the houses on Adkins' street. Green then left through the back door.

Russell admitted that he was intoxicated and had trouble remembering the night of the incident, but he testified that he did not point the knife or strike at Green and that he initially grabbed the knife to protect himself. Russell acknowledged that he was argumentative with Green but testified that he did not lunge towards Green. Russell stated that at some point during the night Green hit him with the bottle of whiskey and the next thing he knew he was on the ground. Russell said he lost consciousness, but he came to lying on his stomach and saw a pool of blood near his face. After he came to—he only remembered bits and pieces—he could hear Adkins and Green fighting and Adkins pleading with Green not to hit Russell again. Russell remembered calling 911 and then leaving the house through the back door.

Officer Kyle Tonniges of the Salina Police Department was sent to investigate a 911 hang up in the area of Fourth Street. Tonniges was provided with a few different addresses from dispatch, but when he got to Fourth Street he decided to approach the only house with its lights on and the front door open. Upon approaching the front of the house, Tonniges observed a black male, later identified as Green, running through the backyard toward a nearby high school. Tonniges went to the front door of the house and saw Adkins through the storm door. He observed her sitting on a couch and noticed that she had blood on her face and shirt. Tonniges testified that when he spoke to Adkins he believed that she had been drinking based on her bloodshot, watery eyes and the odor of alcohol.

Adkins testified that she did not remember a lot of what she said to Tonniges and described herself as shocked and devastated during the conversation. Tonniges video recorded the statement Adkins provided to police that night. Specifically, Adkins told Tonniges that the altercation between Green and Russell started when Russell walked into the home with the stick in a combative manner. Adkins also stated that Green used a bottle to hit Russell in the face. Finally, Adkins provided a written statement to police that night that Green hit Russell with either a bottle or his fist. Tonniges collected a

7

broken knife that was lying on Adkins' living room floor as evidence and described the knife as a kitchen knife about 10 inches in length with the blade broken off at the handle. Tonniges stated that the knife was about 5 feet from a hole in the living room wall and next to where Adkins described Russell as lying.

Adkins testified that she tried to look for Russell after the police and EMS left her house early the next morning and then went to a friend's house. Russell testified that he returned to Adkins' house in the early morning hours and found the door either broken or unlocked. He did not believe anyone else was in the house, and he went to sleep on the couch. Later that morning, Adkins contacted the police to check on her home because she was scared Green was there. When Adkins got to her house, she saw police officers in her front yard. She allowed the officers into her home, and they found that Green was inside. Adkins only went inside the home once the officers removed Green.

The State admitted a video recording from Officer Christopher Venables' body camera showing his interactions with Green, Adkins, and Russell on September 20, 2015. In the video, Adkins opens the front door to let the officers inside, and Venables requests that Green come to the front door. Venables then walks into the house and finds Green in the hallway leading to the bedrooms. Venables handcuffs Green in the front room, and Green tells Russell—who is lying on a couch in that room—to tell the police that he tried to stab him the night before. Green told the police that he had come to the house to get his stuff but did not come to the door that morning because he had just woken up. The video then shows Venables and Green talking outside the house on the front lawn, and Green tells the officers that he came over that morning to get his stuff. He said that he did not initially come to the front door because he was putting his clothes on. Venables asks Green how Adkins received the injury to her eye, and Green stated that she must have gotten it when she tried to stop Russell and him from fighting.

8

Venables testified at trial that he understood Green's statement about why he went over to Adkins' house the night before as Green went to pick up some of his things and Russell and Adkins attacked him. Venables stated that Green did not provide any further details other than Russell pulled out a knife. In the video, Russell states that Green came over the night before and they were all drinking, and then Green came swinging at him. Russell claims he grabbed a knife, not to stab Green but to protect himself and his cousin.

Officer Matthew Steffen was one of the officers who arrived at Adkins' home the following morning. Steffen spoke with Russell and was worried that Russell had a head injury based on the swelling to the left side of his face, but Russell refused medical treatment. A few days later, Russell went to the emergency room because he was having trouble eating and had numbness and pain in his jaw. Dr. Venkata Katasani treated Russell that day and testified that Russell said he was hit several times in the face with a fist or a bottle and that he lost consciousness from the injury. Dr. Katasani also testified that Russell told him he was suffering from headaches, nausea, and pain on the left side of his face and neck. Russell rated his pain as 9 out of 10. Dr. Katasani ordered CT scans and x-rays of Russell's head, facial bones, and neck area. Dr. Patrik Leonard, a radiologist, reviewed the results of Russell's scans and determined that he had recently suffered four fractures to his face, and that such injuries required a fair amount of force. Dr. Leonard testified that a fist could cause such an injury.

Based on Dr. Leonard's assessment, Dr. Katasani referred Russell to Dr. David Hendrick—an ear, nose, and throat doctor—who determined that Russell did not need surgery but advised him to stay on a soft-foods diet for two weeks. Russell was prescribed some pain medication and renewed his pain medication prescriptions at a later date because he was still feeling significant pain. In fact, at the trial held in May 2016, Russell testified he still had some pain when he chews food and that he now tends to chew on the other side of his mouth. Russell also testified that his eye socket does not

9

look the same as it did before the incident and that he still feels numbness in his jaw and eye.

Following the trial, the State amended its complaint and charged Green with one count each of aggravated battery against Adkins and Russell in violation of K.S.A. 2015 Supp. 21-5413(b)(1)(C); one count of criminal damage to property in violation of K.S.A. 2015 Supp. 21-5813(a)(1), (c)(3); one count of violation of a protective order in violation of K.S.A. 2015 Supp. 21-5924(a)(4); and one count of simple battery against Adkins in violation of K.S.A. 2015 Supp. 21-5413(a)(1).

At the close of the evidence, Green requested and the district court permitted a self-defense jury instruction over the State's objection. The district court instructed the jury on each charge and provided a jury instruction on the lesser included offense of simple battery for the two counts of knowing aggravated battery against Adkins and Russell. Green did not request a lesser included offense jury instruction for reckless aggravated battery.

The jury found Green guilty of one count of aggravated battery against Russell; two counts of simple battery against Adkins; one count of criminal damage to property; and one count of a violation of a protective order. The district court sentenced Green to 32 months in prison.

Green timely appeals.

### DID THE DISTRICT COURT ERRONEOUSLY INSTRUCT THE JURY?

Green first argues the district court committed three jury instruction errors by (1) providing an erroneous jury instruction on knowing aggravated battery; (2) not instructing on the lesser included offense of reckless aggravated battery; and (3)

10

providing a burden of proof jury instruction that did not instruct the jury on its power of nullification.

We review jury instructional errors under a four-step approach:

"'"(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).'" [Citation omitted.]" *State v. Fisher*, 304 Kan. 242, 256-57, 373 P.3d 781 (2016).

A.    *Did the district court err in instructing the jury on knowing aggravated battery?*

Green first argues the district court erroneously instructed the jury on the charge of knowing aggravated battery against Russell. Specifically, Green complains the jury instruction was not legally appropriate as it did not clearly state that the physical contact had to be done "in any manner whereby great bodily harm, disfigurement or death can be inflicted." The State counters that Green did not object to the jury instruction.

Because the State is correct, we review Green's allegation of error under the clearly erroneous standard. See K.S.A. 2017 Supp. 22-3414(3); *State v. Brown*, 306 Kan. 1145, 1164, 401 P.3d 611 (2017). The clearly erroneous standard is a two-step review that requires us to "first determine whether the instructions were legally and factually appropriate, employing an unlimited review of the entire record. If error is found, 'the

11

defendant must firmly convince the court the jury would have reached a different result without the error.' [Citations omitted.]" 306 Kan. at 1164.

Green does not contest that the jury instruction on knowing aggravated battery was factually appropriate. Therefore, we limit our examination to its legal appropriateness. For a jury instruction to be legally appropriate, it "'must always fairly and accurately state the applicable law.'" *State v. Kleypas*, 305 Kan. 224, 302, 382 P.3d 373 (2016), *cert. denied* 137 S. Ct. 1381 (2017). As evaluating Green's argument requires us to interpret K.S.A. 2017 Supp. 21-5413(b)(1)(C), the version of knowing aggravated battery under which Green was charged, our review is unlimited. See *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

"'The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. [Citation omitted.]'" *State v. Jordan*, 303 Kan. 1017, 1019, 370 P.3d 417 (2016).

> "'While criminal statutes are generally strictly construed against the State, . . . judicial interpretation must be reasonable and sensible to effectuate the legislative design and the true intent of the law.'
>
> "'. . . When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it.'" *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016).

"[W]hen construing statutes to determine legislative intent, appellate courts must consider various provisions of an act in pari materia, with a view toward reconciling and bringing the provisions into workable harmony if possible." *State v. Keel*, 302 Kan. 560, 573-74, 357 P.3d 251 (2015) (citing *State v. Coman*, 294 Kan. 84, 93, 273 P.3d 701 [2012]), *cert. denied* 136 S. Ct. 865 (2016).

In order for the jury to find Green guilty of aggravated battery against Russell, the State had to prove that Green "knowingly caused physical contact with [Russell] when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death could be inflicted." See K.S.A. 2017 Supp. 21-5413(b)(1)(C). The pattern instruction for aggravated battery, PIK Crim. 4th 54.310 (2016 Supp.), lists the relevant elements of knowing aggravated battery as follows:

"The defendant knowingly caused physical contact with *insert name* (in a rude, insulting or angry manner with a deadly weapon) (in any manner whereby great bodily harm, disfigurement or death can be inflicted)."

The written aggravated battery jury instruction given to the jury read:

"The defendant is charged in Count 2 with aggravated battery. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

1. The defendant knowingly caused physical contact with William Joseph Russell *in a rude, insulting or angry manner in any manner whereby great bodily harm, disfigurement or death can be inflicted*." (Emphasis added.)

When reading the jury instructions to the jury, the district court read the instruction as:

"The defendant is charged in Count 2 with aggravated battery. The defendant pleads not guilty. To establish this charge, each of the following claims must be proved: One, the defendant knowingly caused physical contact with William Joseph Russell in a rude, insulting or angry manner *and* any manner whereby great bodily harm, disfigurement or death can be inflicted." (Emphasis added.)

13

Green specifically argues the district court improperly combined the options "rude, insulting or angry manner with a deadly weapon" with "in any manner whereby great bodily harm, disfigurement or death can be inflicted" by leaving out the phrase "with a deadly weapon," thus making the jury instruction legally inappropriate. At first blush, Green's argument appears to have merit as his argument tracks with the wording of PIK Crim. 4th 54.310. While district courts are not required to use PIK instructions, our Supreme Court "strongly recommend[s] the use of PIK instructions [for] accuracy, clarity, and uniformity [of] jury instructions." *State v. Barber*, 302 Kan. 367, 377-78, 353 P.3d 1108 (2015).

The State counters, relying upon *State v. Ultreras*, 296 Kan. 828, 295 P.3d 1020 (2013), that the district court's knowing aggravated battery jury instruction was legally appropriate despite its exclusion of the phrase "with a deadly weapon." In *Ultreras*, the defendant argued, in relevant part, that K.S.A. 21-3414(a)(2)(B) (now codified as K.S.A. 2017 Supp. 21-5413[b][2][B])—reckless aggravated battery—created an alternative means issue. The statute provided that reckless aggravated battery is "recklessly causing bodily harm to [the victim] with a deadly weapon, or in any manner whereby great bodily harm, disfigurement, or death could be inflicted." 296 Kan. at 853. Ultreras argued on appeal that "these circumstances state two alternatives—one through the phrase 'with a deadly weapon' and a second through the phrase 'in any manner whereby great bodily harm, disfigurement or death can be inflicted.'" 296 Kan. at 853.

The *Ultreras* court rejected his argument:

"The initial appeal of this argument evaporates in light of the fact that the phrase 'causing bodily harm to another person with a deadly weapon' is synonymous with the phrase 'causing bodily harm to another person . . . in any manner whereby great bodily harm, disfigurement or death can be inflicted.' The equivalency of the two phrases is revealed in the manner in which this court has defined 'deadly weapon.' For example, in *State v. Hanks*, 236 Kan. 524, 537, 694 P.2d 407 (1985), *superseded by statute on other*

14

*grounds as stated in State v. Borthwick*, 255 Kan. 899, 916, 880 P.2d 1261 (1994), this court, in the context of an aggravated battery case, defined a deadly weapon as 'an instrument which, from the manner in which it is used, is calculated or likely to produce death or serious bodily injury.' In other words, a deadly weapon is an instrument that can inflict death or great bodily harm, which includes disfigurement. Thus, the phrase 'with a deadly weapon' describes a factual circumstance that proves bodily harm was caused in a 'manner whereby great bodily harm, disfigurement or death can be inflicted' and, as such, is an option within a means rather than an alternative means. [Citation omitted.]" 296 Kan. at 853-54.

We agree with the State that *Ultreras* is applicable here. Consistent with *Ultreras*, the pattern instruction for reckless aggravated battery charged in *Ultreras* (K.S.A. 2017 Supp. 21-5413[b][2][B]) properly groups the phrases: "The defendant recklessly caused bodily harm to *insert name* (with a deadly weapon) (in any manner whereby great bodily harm, disfigurement or death can be inflicted)" because those phrases are synonymous with each other. PIK Crim. 4th 54.310.

We suspect the confusion arises in how PIK Crim. 4th 54.310 phrases the elements of the particular version of knowing aggravated battery charged in this case. In our view, the pattern instruction that corresponds to K.S.A. 2017 Supp. 21-5413(b)(1)(C) incorrectly groups the phrase "with a deadly weapon" with the prior phrase "in a rude, insulting or angry manner." The pattern instruction reads: "The defendant knowingly caused physical contact with *insert name* (in a rude, insulting or angry manner with a deadly weapon) (in any manner whereby great bodily harm, disfigurement or death can be inflicted)." PIK Crim. 4th 54.310. A comparison with simple battery helps illustrate the point.

One version of simple battery requires that the defendant knowingly caused physical contact with another person in a rude, insulting, or angry manner. See K.S.A. 2017 Supp. 21-5413(a)(2). The corresponding PIK instructs: "The defendant knowingly

15

caused physical contact with *insert name* in a rude, insulting or angry manner." PIK Crim. 4th 54.300 (2016 Supp.). This type of battery becomes aggravated when it is committed "with a deadly weapon" or "in any manner whereby great bodily harm, disfigurement or death can be inflicted." K.S.A. 2017 Supp. 21-5413(b)(1)(C). This is the same version of aggravated battery charged here. *Ultreras* instructs us that these phrases are synonymous, which means they can be substituted for each other. Therefore, the relevant pattern instruction for this type of aggravated battery should be phrased as follows:  "The defendant knowingly caused physical contact with *insert name* in a rude, insulting or angry manner (with a deadly weapon) (and in any manner whereby great bodily harm, disfigurement or death can be inflicted)." Note we have added, like the district court did orally, the word "and" to the latter phrase to make it both grammatically and legally correct. See *State v. Salts*, 288 Kan. 263, 266-67, 200 P.3d 464 (2009) (PIK modified to make instruction legally appropriate). Stated another way, the jury should be instructed either one of two ways:

> (1)     "The defendant knowingly caused physical contact with *insert name* in a rude, insulting or angry manner with a deadly weapon."

or

> (2)     "The defendant knowingly caused physical contact with *insert name* in a rude, insulting or angry manner and in any manner whereby great bodily harm, disfigurement or death can be inflicted."

A side-by-side comparison of the battery statute and the corresponding pattern instructions may be helpful:

16

| K.S.A. 2017 Supp. 21-5413(a) Battery is: | PIK Crim. 4th 54.300 |
|---|---|
| (1) knowingly or recklessly causing great bodily harm to another person. | The defendant (knowingly) (recklessly) caused bodily harm to *insert name*. |
| (2) knowingly causing physical contact with another person when done in a rude, insulting or angry manner. | The defendant knowingly caused physical contact with *insert name* in a rude, insulting or angry manner. |

| K.S.A. 2017 Supp. 21-5413(b) Aggravated battery is: | PIK Crim. 4th 54.310 |
|---|---|
| (1)(A) knowingly causing great bodily harm to another person or disfigurement of another person. | The defendant knowingly caused (great bodily harm to) (disfigurement of) *insert name*. |
| (1)(B) knowingly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted. | The defendant knowingly caused bodily harm to *insert name* (with a deadly weapon) (in any manner whereby great bodily harm, disfigurement or death can be inflicted). |
| (1)(C) knowingly causing physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted. | The defendant knowingly caused physical contact with *insert name* (in a rude, insulting or angry manner with a deadly weapon) (in any manner whereby great bodily harm, disfigurement or death can be inflicted). |
| (2)(A) recklessly causing great bodily harm to another person or disfigurement of another person. | The defendant recklessly caused (great bodily harm to) (disfigurement of) *insert name*. |
| (2)(B) recklessly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted. | The defendant recklessly caused bodily harm to *insert name* (with a deadly weapon) (in any manner whereby great bodily harm, disfigurement or death can be inflicted). |

Of particular note is that the PIK Crim. 4th 54.310 instructions for knowing aggravated battery under K.S.A. 2017 Supp. 21-5413(b)(1)(B) and reckless aggravated battery under K.S.A. 2017 Supp. 21-5413(b)(2)(B) also groups the phrases "with a deadly weapon" and "in any manner whereby great bodily harm, disfigurement or death can be inflicted" similarly as we have proposed.

Accordingly, the PIK Committee should modify PIK Crim. 4th 54.310 so the instruction matches the definition of knowing aggravated battery under K.S.A. 2017 Supp. 21-5413(b)(1)(C). The instruction should read:

"The defendant is charged with aggravated battery. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:
. . . .
1.    The defendant knowingly caused physical contact with *insert name* in a rude, insulting or angry manner (with a deadly weapon) (and in any manner whereby great bodily harm, disfigurement or death can be inflicted).
. . . .
2.    This act occurred on or about the ___ day of _____, ____, in _____ County, Kansas.

"[A 'deadly weapon' is an instrument which, from the manner in which it is used, is calculated or likely to produce death or serious bodily injury.]"

Such wording also conforms the language of the pattern instruction to *Ultreras* and harmonizes it with the pattern instructions for the other versions of knowing aggravated battery, reckless aggravated battery, and simple battery.

When applying our analysis to the actual jury instruction given by the district court, we find no error. While the district court did not precisely follow PIK Crim. 4th 54.310, the jury instruction nevertheless fairly and accurately stated the crime of aggravated battery as contained in K.S.A. 21-5413(b)(1)(C). The phrase "with a deadly weapon" did not need to be included as it is synonymous with the included phrase "in any manner whereby great bodily harm, disfigurement or death can be inflicted." See *Ultreras*, 296 Kan. at 853. The district court did not commit clear error by instructing the jury on knowing aggravated battery as the jury instruction was legally appropriate.

18

B.	*Did the district court err in failing to instruct the jury on the lesser included offense of reckless aggravated battery?*

Next, Green argues that some evidence at trial supported a jury instruction on the lesser included offense of reckless aggravated battery. But like the jury instruction on knowing aggravated battery, Green did not request the jury instruction or object to the district court's failure to include a jury instruction on reckless aggravated battery. Accordingly, Green must show clear error in the district court's failure to so instruct. See *State v. Cameron*, 300 Kan. 384, 389, 329 P.3d 1158, *cert. denied* 135 S. Ct. 728 (2014). As previously stated, to show clear error, an instruction on reckless aggravated battery had to be both legally and factually appropriate, and Green must firmly convince us that the jury would have reached a different result without the error. See *Brown*, 306 Kan. at 1164.

1.	*Was a reckless aggravated battery jury instruction legally appropriate?*

Green argues that reckless aggravated battery under K.S.A. 2017 Supp. 21-5413(b)(2)(B), a severity level 8 person felony, is a lesser included offense of knowing aggravated battery under K.S.A. 2017 Supp. 21-5413(b)(1)(B), a severity level 7 person felony, because only the degree of mental culpability differentiates the two crimes. The State readily agrees that severity level 8 reckless aggravated battery is a lesser included offense of severity level 7 knowing aggravated battery. While we agree that reckless aggravated battery is a lesser included offense of knowing aggravated battery under K.S.A. 2017 Supp. 21-5413(b)(1)(C), the crime charged, an explanation is required.

A lesser included crime is, in relevant part, "[a] lesser degree of the same crime" or "a crime where all elements of the lesser crime are identical to some of the elements of the crime charged[.]" K.S.A. 2017 Supp. 21-5109(b)(1), (2). A district court is required to

19

instruct on any lesser included crime when some evidence supports the crime. *State v. Gatlin*, 292 Kan. 372, 376, 253 P.3d 357 (2011).

Distracting us from the core of Green's argument is his assertion that reckless aggravated battery under K.S.A. 2017 Supp. 21-5413(b)(2)(B) is a lesser included offense of knowing aggravated battery under K.S.A. 2017 Supp. 21-5413(b)(1)(B). However, Green was charged with knowing aggravated battery contained in K.S.A. 2017 Supp. 21-5413(b)(1)(C). Summarized, there are three types of knowing aggravated battery:

1)      *knowingly* causing great bodily harm or disfigurement under K.S.A. 2017 Supp. (b)(1)(A);

2)      *knowingly* causing bodily harm with a deadly weapon or in any manner where great bodily harm, disfigurement, or death can be inflicted under K.S.A. 2017 Supp. 21-5413(b)(1)(B); and

3)      *knowingly* causing physical contact when done in a rude, insulting, or angry manner with a deadly weapon or in any manner whereby great bodily harm, disfigurement, or death could be inflicted under K.S.A. 2017 Supp. 21-5413(b)(1)(C).

There are also two corresponding versions of reckless aggravated battery:

1)      *recklessly* causing great bodily harm or disfigurement under K.S.A. 2017 Supp. 21-5413(b)(2)(A), and

2)      *recklessly* causing bodily harm with a deadly weapon or in any manner where great bodily harm, disfigurement, or death can be inflicted under K.S.A. 2017 Supp. 21-5413(b)(2)(B).

20

While Green claims that the bodily harm version of reckless aggravated battery is a lesser included offense of the bodily harm version of knowing aggravated battery, what Green is really asking us to find is that the bodily harm version of reckless aggravated battery is also a lesser included offense for the physical contact version of knowing aggravated battery. This is problematic because the elements are so dissimilar, contrary to K.S.A. 2017 Supp. 21-5109(b)(2). The mens rea element—knowing versus reckless—does not match. Compare K.S.A. 2017 Supp. 21-5413(b)(1)(C) (knowing aggravated battery) with K.S.A. 2017 Supp. 21-5413(b)(2)(B) (reckless aggravated battery); see also *State v. Bernhardt*, 304 Kan. 460, 474, 372 P.3d 1161 (2016) ("[R]eckless second-degree murder is not a lesser included offense of intentional second-degree murder . . . [b]ecause they have different mens rea requirements[.]"). Nor does part of the actus rea element match, as the version of knowing aggravated battery with which Green was charged merely requires, in part, physical contact, while the offense which Green claims is a lesser included offense, reckless aggravated battery, requires, in part, bodily harm. Compare K.S.A. 2017 Supp. 21-5413(b)(1)(C) (caused physical contact) with K.S.A. 2017 Supp. 21-5413(b)(2)(B) (caused bodily harm).

This notwithstanding, bodily harm reckless aggravated battery under K.S.A. 2017 Supp. 21-5413(b)(2)(B) qualifies as a lesser included offense of physical contact knowing aggravated battery under K.S.A. 2017 Supp. 21-5413(b)(1)(C) because it is a "lesser degree of the same crime." See K.S.A. 2017 Supp. 21-5109(b)(1). Green was charged with physical contact knowing aggravated battery, which is a severity level 7 person felony, while bodily harm reckless aggravated battery is a severity level 8 person felony. K.S.A. 2017 Supp. 21-5413(g)(2)(B); (g)(2)(D). Because a severity level 8 aggravated battery is a lesser degree of the same crime as a severity level 7 aggravated battery, due to the fact that the higher the severity level of the crime the lower the sentence, severity level 8 reckless aggravated battery is a lesser included offense of severity level 7 knowing aggravated battery. See *State v. McCarley*, 287 Kan. 167, 177-78, 195 P.3d 230 (2008) (finding severity level 5 and 8 aggravated battery crimes are lesser degrees of

21

severity level 4 aggravated battery). Therefore, it would have been legally appropriate for the district court to include such a lesser included jury instruction.

2.      *Was a reckless aggravated battery jury instruction factually appropriate?*

To analyze whether the instruction was factually appropriate, we begin with direction from K.S.A. 2017 Supp. 22-3414(3): "In cases where there is some evidence which would reasonably justify a conviction of some lesser included crime as provided in subsection (b) of K.S.A. 2017 Supp. 21-5109, and amendments thereto, the judge shall instruct the jury as to the crime charged and any such lesser included crime." The Kansas Supreme Court has held:

> "[L]esser included offense instructions must be given when there is some evidence, emanating from whatever source and proffered by whichever party, that would reasonably justify a conviction of some lesser included crime. . . . To determine whether a lesser included offense instruction should have been given, this court views the evidence in a light most favorable to the defendant. [Citations omitted.]" *State v. Rodriguez*, 295 Kan. 1146, 1152, 289 P.3d 85 (2012).

But a district court does not err in failing "to give a lesser included offense instruction on a crime which is unsupported by the evidence in that particular case." *State v. Plummer*, 295 Kan. 156, 161, 283 P.3d 202 (2012).

Green first argues that some evidence supports the lesser included offense jury instruction for reckless aggravated battery because under the statutory provision of K.S.A. 2017 Supp. 21-5202(c), the same evidence that established a knowing mental state also establishes "some evidence" of a reckless mental state. K.S.A. 2017 Supp. 21-5202(c) states:

"*Proof of a higher degree of culpability than that charged constitutes proof of the culpability charged*. If recklessness suffices to establish an element, that element also is established if a person acts knowingly or intentionally. If acting knowingly suffices to establish an element, that element also is established if a person acts intentionally." (Emphasis added.)

But when viewing K.S.A. 2017 Supp. 21-5202 as a whole, subsection (a) states: "[A] culpable mental state is an essential element of every crime defined by this code. A culpable mental state may be established by proof that the conduct of the accused person was committed 'intentionally,' 'knowingly' or 'recklessly.'" K.S.A. 2017 Supp. 21-5202(b) provides that "[c]ulpable mental states are classified according to relative degrees, from highest to lowest, as follows: (1) [i]ntentionally; (2) knowingly; (3) recklessly."

Additionally, the statute defines the mental states for knowingly and recklessly:

"(i) A person acts 'knowingly,' or 'with knowledge,' . . . when such person is aware of the nature of such person's conduct or that the circumstances exist [and] when such person is aware that such person's conduct is reasonably certain to cause the result. . . .

"(j) A person acts 'recklessly' or is 'reckless,' when such person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." K.S.A. 2017 Supp. 21-5202.

The plain language of the first sentence in K.S.A. 2017 Supp. 21-5202(c) states: "Proof of a higher degree of culpability *than that charged* constitutes proof of the culpability *charged*." (Emphasis added.) Thus, K.S.A. 2017 Supp. 21-5202(c) applies to satisfy the proof of a culpability element of a crime charged against the defendant. According to K.S.A. 2017 Supp. 21-5202(a)-(c), the State here satisfied the knowingly element in the knowing aggravated battery charges by proving the defendant intentionally committed the aggravated batteries.

23

One panel of this court has found that the culpability provision does not apply to lesser included offenses under the plain language of the statute. In *State v. Younger*, No. 116,441, 2018 WL 911414 (Kan. App. 2018) (unpublished opinion), *petition for rev. filed* March 19, 2018, the State charged Younger with intentional second-degree murder. The jury was instructed on two lesser included offenses for voluntary manslaughter and involuntary manslaughter. On appeal, Younger asserted that the district court erred in failing to instruct the jury to consider the voluntary manslaughter charge at the same time as the intentional second-degree murder charge, rather than sequentially as a lesser included offense. Younger's argument relied, in part, on finding that the culpability provision under K.S.A. 2016 Supp. 21-5202(c) applies to lesser included offenses. The panel rejected this interpretation upon finding "the plain language of subsection (c) indicates it only applies to crimes charged." 2018 WL 911414, at *19. Green's interpretation of K.S.A. 2017 Supp. 21-5202(c) as applied to lesser included offenses also would tend to cause any lesser included offense with a lower culpable mental state than the crime charged to become factually appropriate regardless of whether the facts or the evidence support the applicable mental state and despite the differences in the culpable mental state definitions. Compare K.S.A. 2017 Supp. 21-5202(i) with (j). Therefore, we reject Green's claim that evidence of knowing conduct also amounts to some evidence of reckless conduct.

The State argues that the district court did not err in failing to instruct the jury on the lesser included offense of reckless aggravated battery because Green asserted a claim of self-defense. But "'[t]he court's duty to instruct on lesser included crimes is not foreclosed or excused just because the lesser included crime may be inconsistent with the defendant's theory of defense.' *Simmons*, 283 P.3d 212, Syl. ¶ 3." *Rodriguez*, 295 Kan. at 1152. Moreover, our Supreme Court has held "that the evidence which would support a conviction on a lesser included crime is not restricted to that which was proffered by the defense, but rather it can include evidence presented by the State, as well." *State v. Simmons*, 295 Kan. 171, 176, 283 P.3d 212 (2012).

24

Green's additional argument in favor of a reckless aggravated battery jury instruction is that his intoxication that night establishes some evidence that a jury could reasonably find that his acts against Russell were reckless because he could not form a knowing intent.

To justify a lesser included jury instruction on reckless aggravated battery under K.S.A. 2017 Supp. 21-5413(b)(2)(B), there must be some evidence that Green committed aggravated battery by "recklessly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." A person acts recklessly if that person "consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." K.S.A. 2017 Supp. 21-5202(j).

When viewing the evidence in the light most favorable to Green, there was little evidence presented at trial establishing that Green's intoxication caused him to act recklessly or prevented a knowing intent. Testimony from Russell and Adkins provided that Green drank alcohol that night. This evidence does not necessarily support a finding that Green's intoxication impacted his ability to form a knowing intent or to act recklessly; rather, it is unclear how intoxicated Green was or whether his intoxication affected his intent. Moreover, Green did not testify or put on evidence.

More importantly, the evidence shows instead that Green acted knowingly or intentionally. The State had to prove that Green knowingly hit Russell or was "reasonably certain" that his physical contact would result in great bodily harm, disfigurement, or death. K.S.A. 2017 Supp. 21-5202(i); K.S.A. 2017 Supp. 21-5413(b)(1)(C). Here, Adkins testified that before Green hit Russell, Green had led her from the outside of the house into her bedroom in order for her to tell Russell to leave. After she complied, Green went after Russell when Russell reentered the living room with a stick. Adkins' testimony and

25

prior statements indicate Green either hit Russell with his fist first and then hit Russell with a bottle or Green only hit Russell with a bottle. Russell testified that he was hit with a bottle of whiskey in the face and lost consciousness. Adkins testified that Green left but then came back and went after Russell again when Russell was on the ground and shouted something along the lines of, "Why shouldn't I?" Russell testified that he could hear Adkins pleading with Green to stop after he was on the ground. This evidence does not support a finding that Green acted recklessly.

However, we can consider whether Green's counsel's closing argument supports a reckless aggravated battery jury instruction. See *State v. Davis*, No. 115,566, 2017 WL 3324693, at *4 (Kan. App. 2017) (unpublished opinion), *rev. denied* 307 Kan. ___ (February 26, 2018). In closing argument, defense counsel stated that the jury should consider: (1) Russell's and Adkins' inconsistent statements; (2) Green's failure to deny hitting Russell and Adkins and his assertion he hit them in self-defense; (3) the State's failure to charge Green with aggravated battery with a deadly weapon; and (4) convicting Green of committing simple battery. Notably, counsel did not argue or allude to Green's level of intoxication as affecting his ability to form a knowing intent or causing him to act in a reckless manner towards Russell. Defense counsel also did not argue that Green merely acted recklessly, regardless of his intoxication. Instead, defense counsel argued Green either committed the battery in self-defense or he committed simple battery.

In sum, when considering the evidence and closing arguments, the jury was left with the options of finding that Green knowingly committed aggravated battery, acted in self-defense, or committed simple battery. See 2017 WL 3324693, at *4; see also *Horne*, 2015 WL 6832956, at *6 ("Horne did not argue the theory of reckless conduct at trial. The evidence left the jury with the following options—Horne shot Cargile intentionally or the gun discharged accidentally."). Accordingly, a lesser included instruction on reckless aggravated battery was not factually appropriate, and the district court did not err in failing to give it.

Finally, even if we assume the district court erred in failing to give a lesser included instruction on reckless aggravated battery, Green fails to firmly convince us that the jury would have reached a different verdict had the instruction been given for the reasons we have just outlined above. "'[W]hen a lesser included offense has been the subject of an instruction, and the jury convicts of the greater offense, error resulting from failure to give an instruction on another still lesser included offense is cured.'" *State v. Carter*, 305 Kan. 139, 163, 380 P.3d 189 (2016). The district court instructed the jury on the lesser included offense of simple battery, yet the jury found Green guilty as charged on knowing aggravated battery. There was no clear error.

C.      *Did the district court err in giving a burden of proof jury instruction that did not properly instruct the jury on its power of nullification?*

Green next argues that the district court discouraged the jury from exercising its power of nullification by using the PIK Crim. 4th 51.010 burden of proof jury instruction. The State argues that Green invited any error because he proposed the burden of proof jury instruction ultimately given by the district court.

"Generally, a defendant cannot complain on appeal about a claimed error that was invited." *State v. Sasser*, 305 Kan. 1231, 1235, 391 P.3d 698 (2017). "The invited error doctrine applies only when the party fails to object *and* invites the error, unless the error is structural." *State v. Logsdon*, 304 Kan. 3, 31, 371 P.3d 836 (2016). Our Supreme Court has stated that the doctrine almost certainly applies "when a defendant actively pursues what is later argued to be error," such as when the defendant submits a proposed jury instruction. *Sasser*, 305 Kan. at 1236. But see *State v. Clay*, 300 Kan. 401, 410, 329 P.3d 484 (2014) (finding error not invited if unclear from record who proposed jury instruction). We find that any error in the burden of proof jury instruction was invited by Green because he not only failed to object to the jury instruction, but he also submitted the jury instruction which he now argues was erroneous.

27

Even if we assume that Green did not invite any error, "[a] party cannot claim instructional error unless he or she either objects to the error or the error is determined to be clearly erroneous." *State v. Allen*, 52 Kan. App. 2d 729, 733, 372 P.3d 432 (2016). Because Green did not object to the burden of proof jury instruction, we may reverse only if Green convinces us "'the jury would have reached a different result without the error.' [Citation omitted.]" *Brown*, 306 Kan. at 1164.

Green does not contest whether the jury instruction was factually appropriate but argues that the burden of proof jury instruction was legally inappropriate because it did not properly advise the jury on its power of nullification. Kansas law has consistently held that

> "criminal defendants are not entitled to have the jury instructed on its inherent power of nullification—the power to disregard the rules of law and evidence in order to acquit the defendant based upon the jurors' sympathies, notions of right and wrong, or a desire to send a message on some social issue." *Allen*, 52 Kan. App. 2d at 734.

"It is not the role of the jury to rewrite clearly intended legislation, nor is it the role of the courts to instruct the jury that it may ignore the rule of law, no matter how draconian it might be." *State v. Naputi*, 293 Kan. 55, 66, 260 P.3d 86 (2011).

In *State v. Smith-Parker*, 301 Kan. 132, 163, 340 P.3d 485 (2014), however, the Kansas Supreme Court found the following jury instruction amounted to error: "'If you do not have a reasonable doubt from all the evidence that the State has proven murder in the first degree on either or both theories, then you *will* enter a verdict of guilty.'" (Emphasis added.) While the *Smith-Parker* court acknowledged it had "rejected a defense argument that a criminal jury should be instructed on its inherent power of nullification, . . . the district judge's instruction in this case went too far in the other direction. It essentially forbade the jury from exercising its power of nullification. [Citations omitted.]" 301 Kan.

28

at 164. The Supreme Court determined that the word "will" in a burden of proof jury instruction essentially directed a verdict for the State, and a judge "cannot compel a jury to convict, even if it finds all elements proved beyond a reasonable doubt." 301 Kan. at 164.

The jury instruction that Green challenges as error mirrors the language in PIK Crim. 4th 51.010 and reads as follows:

> "The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty unless you are convinced from the evidence that he is guilty.

> "The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty. *If you have no reasonable doubt as to the truth of each of the claims to be proved by the State, you should find the defendant guilty*." (Emphasis added.)

Specifically, Green argues that the use of the word "should" in instructing the jury directs or compels the jury to enter a guilty verdict. Green argues that because "should" is a synonym of "must" or "shall," then the use of "should" in the jury instruction is error.

This court has consistently found that PIK Crim. 4th 51.010 "'does not upset the balance between encouraging jury nullification and forbidding it. . . . [U]nlike the words must, shall, and will, the word should does not express a mandatory, unyielding duty or obligation; instead, it merely denotes the proper course of action and encourages following the advised path.' *Hastings*, 2016 WL 852857, at *4." *Allen*, 52 Kan. App. 2d at 735. In *State v. Singleton*, No. 112,997, 2016 WL 368083, at *6 (Kan. App.) (unpublished opinion), *rev. denied* 305 Kan. 1257 (2016), this court further explained:

29

"[A]s every teacher instructing a class knows, and as every parent admonishing a child knows, should is less of an imperative than must or will. . . . Should as used in this instruction is not the equivalent of 'must' or 'will' used in the instructions discussed [in other cases]. Should is advisory. It is not an imperative. The district court did not err in giving this instruction."

Green argues these decisions are distinguishable because here the prosecutor and the district court also made comments that further prohibited the jury from exercising its power of nullification. But the record citations Green provides in support of these alleged comments either do not relate to his arguments or do not exist in the record on appeal. As Green presents no other arguments as to why the district court erred in giving this instruction, we find the burden of proof jury instruction was legally appropriate, and the district court did not err.

DID THE DISTRICT COURT VIOLATE GREEN'S CONSTITUTIONAL RIGHTS AT SENTENCING?

Finally, Green argues the district court violated his constitutional rights under the Sixth and Fourteenth Amendments to the United States Constitution as recognized in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), when it sentenced him without requiring the State to prove his prior convictions or criminal history to the jury beyond a reasonable doubt. Green concedes that the Kansas Supreme Court has already decided this issue against him but raises it to preserve the issue for federal review. See *Fisher*, 304 Kan. at 264; *State v. Ivory*, 273 Kan. 44, 45-48, 41 P.3d 781 (2002). Because there is no indication that our Supreme Court is departing from this position, we are duty bound to follow it. See *State v. Hall*, 298 Kan. 978, 983, 319 P.3d 506 (2014). The district court properly used Green's criminal history to establish his sentence.

Affirmed.