NOT DESIGNATED FOR PUBLICATION

No. 126,838

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MATTHEW ALEXANDER AITCH,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN M. SMITH, judge. Submitted without oral argument. Opinion filed August 1, 2025. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Kristi D. Allen*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before SCHROEDER, P.J., HILL and GARDNER, JJ.

PER CURIAM: Matthew Alexander Aitch timely appeals his jury conviction of aggravated battery, claiming the district court erred in failing to instruct the jury on the lesser included crime of reckless aggravated battery. After a thorough review, we find Aitch has failed to establish it was clear error not to give the instruction. We affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

Aitch and his girlfriend, Zaria Tucker, had a turbulent relationship. On August 11, 2021, Aitch showed up at Tucker's mother's residence causing a disturbance. Aitch choked Tucker's mother, Seneca Porter, to the point of unconsciousness. The State charged Aitch with aggravated battery. Aitch proceeded to a jury trial where several witnesses testified about the incident, including Aitch, Porter, Porter's mother, and Porter's niece.

On the day of the incident, Aitch called Seneca from Tucker's phone. Seneca testified that Aitch was agitated and had "a manic-type tone" because Tucker took his car without permission. Seneca—who was standing outside on her back patio—hung up the phone when Tucker pulled up to her residence in Aitch's car. Seneca and Tucker sat on the back patio for about an hour discussing what had happened between Tucker and Aitch before Aitch showed up at Seneca's residence. The parties' testimony differs as to what caused the ruckus.

Seneca testified that Aitch was dropped off and jumped out of the passenger side of the car screaming and looking for his car keys, which were on the patio table. Tucker said nothing but pointed to the keys. Aitch grabbed the keys but did not leave. Aitch started making threatening comments and using profanities towards Tucker. Seneca stepped between Aitch and Tucker to protect Tucker and, at one point, told Aitch he was disrespectful to women. The situation escalated, and Seneca told Tucker to go inside. Seneca testified she knew the neighbors could hear her and she started yelling for someone to call 911. Seneca explained that Aitch grabbed her, they "tussled," and Aitch tightly wrapped his arm around her neck to the point where she could not breathe and became unconscious.

Seneca testified her vision and memory were fuzzy when she regained consciousness but recalled someone swinging a bat at Aitch's car as he was leaving. Seneca called 911 after Aitch left. When law enforcement arrived, the witnesses were separated into different rooms to obtain each witness' independent recollection of events. In addition to losing consciousness, Seneca sustained a golf ball size abrasion on her forehead and scratches on her hands, knees, and feet. When Seneca regained consciousness, she vomited and complained her throat hurt for a few days. Seneca went to the hospital for an assessment and medical treatment shortly after the incident.

Seneca's mother, Doronna Porter, who was living with Seneca at the time of the incident, also testified. Doronna explained that on August 11, 2021, she was watching TV with Seneca and Seneca kept getting phone calls. Seneca eventually got up and went to the back patio to answer the phone. Seneca did not come back inside, and Doronna later heard Tucker yelling, "[D]on't hit my mother." Doronna went outside and saw Seneca on the ground and Aitch with his arm around Seneca's neck and legs.

Doronna saw Tucker trying to pull Aitch off Seneca and went back inside to look for a bat. When Doronna came back outside, she hit Aitch on the legs with the bat five or six times until he let go of Seneca.

Makala Smith, Seneca's niece, was also present at the time of the incident. Smith testified she heard Seneca scream and Tucker yell, "[G]et off of her." Smith went outside and saw Aitch strangling Seneca from behind and Tucker trying to pull Aitch off. Smith began punching Aitch to get him off Seneca and said Doronna came out of the house with a bat and started hitting Aitch until he left.

Aitch testified in his defense and explained he discovered his vehicle was missing from his home that he shared with Tucker. Aitch contacted the Wichita Police Department to report the theft of his vehicle. Aitch had a GPS tracker on the vehicle and,

3

based on the direction the vehicle was heading, claimed he knew where the vehicle was going. Aitch then called Seneca to tell her he was coming over to her residence to get the vehicle.

Once Aitch arrived at Seneca's residence, Aitch walked to the backyard where he saw Seneca and Tucker sitting at a table. Aitch claimed he asked for the car keys, Tucker tossed the keys toward the end of the table, and he went to pick up the keys when Seneca started speaking with him. Aitch did not want to talk so he turned to leave and began walking away with his back to Seneca and Tucker. Aitch testified he got to the front of his car and Seneca jumped with both feet off the ground onto his back and they both fell to the ground.

Aitch claimed he and Seneca "got into a little scuffle" as he tried to get her off his back. Tucker started yelling at Aitch, and Smith came out of the house swinging a bat, hitting Aitch in the eye. Once Aitch got up, Seneca started punching and kicking him. Doronna also came outside and started hitting and kicking Aitch. According to Aitch, Tucker then stepped between her family and Aitch, giving him a chance to get to his car and leave.

Aitch claimed he drove to a gas station when the police officer he previously spoke to called him back. Aitch explained he retrieved his vehicle and, while doing so, his girlfriend's mother jumped on him simply because she wanted to talk to him and Aitch did not want to talk. Aitch denied strangling Seneca, putting Seneca in a headlock, or throwing Seneca on the ground. Aitch suggested Seneca obtained the abrasion on her head when Doronna and Smith were punching and kicking him.

Aitch claimed his actions were done in self-defense. The district court included jury instructions on self-defense as well as the lesser included crime of simple battery.

4

The jury found Aitch guilty of aggravated battery, and the district court later imposed Aitch's sentence. Additional facts are set forth as necessary.

ANALYSIS

*A jury instruction on the lesser included offense of reckless aggravated battery was legally and factually appropriate, but its omission was not clearly erroneous.*

Aitch argues the district court erred in failing to provide a jury instruction on reckless aggravated battery as a lesser included offense of aggravated battery. Aitch seeks reversal of his conviction and remand for a new trial.

When considering instructional issues, we first consider the reviewability of the issue from both jurisdiction and preservation viewpoints. We then consider whether the instruction was legally and factually appropriate. Finally, if the district court erred, we must determine whether the error requires reversal. *State v. McLinn*, 307 Kan. 307, 317-18, 409 P.3d 1 (2018).

Our reversibility inquiry depends on whether a party properly preserved the jury instruction issue below. 307 Kan. at 317. We review unpreserved instructional errors for clear error. K.S.A. 22-3414(3). Jury instructions are clearly erroneous if an error occurred and the reviewing court is "'firmly convinced that the jury would have reached a different verdict had the instruction error not occurred.'" *McLinn*, 307 Kan. at 318. Aitch, as the party claiming clear error, carries the burden to establish the prejudice. See 307 Kan. at 318.

Aitch admits he failed to ask the district court for a jury instruction on the lesser included crime of reckless aggravated battery. Therefore, he must establish an

5

instructional error occurred and firmly convince us the jury would have reached a different verdict had such error not occurred.

K.S.A. 21-5109(b) states: "Upon prosecution for a crime, the defendant may be convicted of either the crime charged or a lesser included crime, but not both." A lesser included crime includes, among other things, "[a] lesser degree of the same crime" or "a crime where all elements of the lesser crime are identical to some of the elements of the crime charged." K.S.A. 21-5109(b)(1), (b)(2). "[T]he [district] judge shall instruct the jury as to the crime charged and any such lesser included crime." K.S.A. 22-3414(3).

Both parties agree in their briefs, and so do we, an instruction on reckless aggravated battery under K.S.A. 2021 Supp. 21-5413(b)(2)(B) was legally appropriate as it is a lesser degree of aggravated battery under K.S.A. 2021 Supp. 21-5413(b)(1)(C). See *State v. Turner*, No. 126,181, 2024 WL 5230295, at *14 (Kan. App. 2024) (unpublished opinion), *rev. denied* 320 Kan. ___ (2025). Now we must determine whether a jury instruction on the lesser included crime of reckless aggravated battery was factually appropriate. That is, viewed in the light most favorable to Aitch, as the defendant and requesting party, there must be sufficient evidence to support the jury instruction. See *State v. Roberts*, 314 Kan. 835, 844, 503 P.3d 227 (2022).

K.S.A. 21-5413(b)(1)(C)—the crime for which Aitch was convicted—defines aggravated battery as "*knowingly* causing physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." In contrast, reckless aggravated battery is "*recklessly* causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." (Emphasis added.) K.S.A. 21-5413(b)(2)(B).

6

Aitch argues there are two differences between aggravated battery and reckless aggravated battery: (1) the mental culpability required to commit the crime—knowingly versus recklessly; and (2) aggravated battery requires physical contact with another person in a rude, insulting, or angry manner whereas reckless aggravated battery requires bodily harm to another person. As to the first statutory difference between the two crimes, Aitch contends he was charged with knowing conduct and proving the conduct was committed knowingly necessarily proves the conduct was committed recklessly. See K.S.A. 21-5202(b) ("Culpable mental states are classified according to relative degrees, from highest to lowest, as follows: [1] Intentionally; [2] knowingly; [3] recklessly."); K.S.A. 21-5202(c) ("Proof of a higher degree of culpability than that charged constitutes proof of the culpability charged.").

As the State points out, this argument was rejected by another panel of our court in *State v. Green*, 55 Kan. App. 2d 595, 614, 419 P.3d 83 (2018), because "'the plain language of [K.S.A. 2017 Supp. 21-5202(c)] indicates it only applies to crimes charged.'" The *Green* panel explained:

> "Green's interpretation of K.S.A. 2017 Supp. 21-5202(c) as applied to lesser included offenses also would tend to cause any lesser included offense with a lower culpable mental state than the crime charged to become factually appropriate regardless of whether the facts or the evidence support the applicable mental state and despite the differences in the culpable mental state definitions." 55 Kan. App. 2d at 614.

We need not address the technicalities in *Green* because Aitch presented evidence, albeit weak evidence, he committed the crime of aggravated battery with a reckless mental state. "A person acts 'recklessly' . . . when such person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." K.S.A. 21-5202(j).

Here, Aitch testified he grabbed his car keys and walked away from Seneca and Tucker when Seneca jumped on his back, causing both to fall to the ground. Aitch claimed he and Seneca "got into a little scuffle" as he tried to get her off his back. Aitch explained he was the victim and acted in self-defense, and any injuries Seneca sustained occurred from her own family members who were hitting and kicking him. The State suggests the very fact Aitch requested and received a self-defense instruction establishes he acted knowingly. Aitch, on the other hand, claims it was an imperfect self-defense—a defense based on the "subjective belief[] of the defendant." See *State v. Seba*, 305 Kan. 185, 208, 380 P.3d 209 (2016). "An instruction on a lesser included offense is not foreclosed because it is inconsistent with either the evidence presented by the defense or the theory advanced by the defense. A defendant is entitled to inconsistent defenses." *State v. Williams*, 303 Kan. 585, 599, 363 P.3d 1101 (2016). Even so, the jury did not find Aitch was acting in self-defense, leaving open the possibility of acting recklessly.

Aitch described the scene as that of a cartoon show where the characters rumble in a cloud of smoke and Seneca was simply caught in the crossfire. That is, some evidence—albeit weak evidence—supported the premise Aitch consciously disregarded a substantial and unjustifiable risk of causing bodily harm to Seneca during their "scuffle." And such disregard constituted a gross deviation from the standard of care which a reasonable person would exercise in the situation. Aitch acknowledges there was evidence of bodily harm in both parties' version of the incident. Viewing the evidence in the light most favorable to Aitch, there was evidence to support the jury instruction on reckless aggravated battery. See *Roberts*, 314 Kan. at 844. The instruction, therefore, was factually appropriate.

Even though the jury instruction was factually appropriate, Aitch still fails to meet his burden to establish the district court's failure to give the lesser included instruction amounted to clear error. Aitch claims that "the jury *might* have believed that his actions were reckless" and "the jury *could* believe" he needed to defend himself, though his self-

8

defense efforts were beyond what a reasonable person would do in the same situation. (Emphases added.) Contrary to Aitch's testimony, Seneca, Doronna, and Smith testified Aitch wrapped his arms around Seneca's neck and would not let go. At the time, Doronna and Smith did not know Seneca lost consciousness. Seneca, Doronna, and Smith had consistent testimony related to the incident, which was directly contradictory to Aitch's statement of events.

Taralyn Muddiman, a registered nurse who treated Seneca after the incident, also testified and her testimony reflected Seneca reported moderate neck pain, a severe headache, pain swallowing, nausea and vomiting, abdominal pain, coughing, and loss of consciousness. Muddiman examined Seneca's eyes and noted petechiae, or broken blood vessels. Seneca also had scattered petechiae and bruising to her tongue, which can be consistent with strangulation. Muddiman testified the symptoms Seneca reported were consistent with Seneca's report of strangulation. Based on the evidence in its entirety, Aitch has failed to show prejudice and firmly convince us the jury would have reached a different verdict had the lesser included instruction of reckless aggravated battery been provided to the jury for consideration. See *McLinn*, 307 Kan. at 318.

Affirmed.