NOT DESIGNATED FOR PUBLICATION

No. 118,364

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SHAWN ERIC OCHOA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; W. LEE FOWLER, judge. Opinion filed October 19, 2018. Affirmed in part, reversed in part, sentence vacated, and case remanded with directions.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Carissa Brinker*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., ATCHESON, J., and WALKER, S.J.

PER CURIAM: Shawn Eric Ochoa appeals his conviction and sentence for aggravated battery. He raises five issues. First, Ochoa contends the district court erred in ruling that he was not entitled to immunity from prosecution under K.S.A. 2016 Supp. 21-5231. Second, he claims the State committed three prosecutorial errors. Third, Ochoa asserts the district court erred by failing to give lesser included offense instructions for the crimes of reckless battery and domestic battery. Fourth, Ochoa claims the cumulative effect of these individual errors denied him a fair trial. Finally, with regard to sentencing, Ochoa asserts the district court erred by imposing an upward durational departure

1

sentence. Upon our review, we affirm in part, reverse in part, vacate the sentence, and remand for resentencing.

FACTUAL AND PROCEDURAL BACKGROUND

Ochoa and Cheyenne Smith began dating in May 2016 and were in a romantic relationship for three or four months. During this time, the couple lived together in a small apartment with Smith's two-year-old daughter, A.S.

On August 4, 2016, Officer Daniel Delgadillo and medical personnel were dispatched to the apartment in response to a call from Ochoa. Upon arrival, Officer Delgadillo observed Smith lying on her back, having trouble breathing, and she had vomited on herself. Smith was transported to a hospital.

Upon arrival at the hospital, Smith told a nurse that she had passed out and did not know what happened. Upon examination, however, the nurse noticed several signs suggesting that Smith had been strangled. These signs included that Smith had passed out, complained of a sore throat, had difficulty breathing, had vomited, and was constantly rubbing her neck.

While Smith was hospitalized, Ochoa called the hospital staff and Smith's cell phone numerous times with angry and threatening comments. After Ochoa arrived at the hospital, Smith decided to leave although she was not cleared for release. Smith later testified that she wanted to leave the hospital because she had no way to cover up what really happened. The hospital staff called the police because the situation between Smith and Ochoa became heated.

Before Smith and Ochoa could leave, police officers arrived and persuaded Smith to readmit herself into the hospital. Outside the presence of Ochoa, Smith told Officer

2

Delgadillo that Ochoa would kill her if she said anything about what occurred that night. During this conversation, Officer Delgadillo noted that Smith was having trouble swallowing, her voice was hoarse, and she had redness around her neck and upper chest area. Smith decided to leave the hospital again after staff refused to let her smoke. Officer Delgadillo drove her to the apartment. About 20 minutes later, Smith called 911 and reported that Ochoa was calling people to have her killed. When police arrived, Smith told Officer Delgadillo that she originally needed medical attention because Ochoa strangled her and threw her down.

The State charged Ochoa with alternative counts of aggravated battery in violation of K.S.A. 2016 Supp. 21-5413(b)(1)(B) and (b)(1)(C). Before the preliminary hearing, Ochoa moved for self-defense immunity under K.S.A. 2016 Supp. 21-5231. The district court conducted an immunity hearing wherein Smith presented testimony. After hearing the evidence, the district court denied Ochoa's motion for immunity from prosecution.

During the jury trial, Smith testified about the events of August 4, 2016. According to Smith, earlier in the day, Ochoa and Smith had an argument because she did not want to post bail for Ochoa's brother. Ochoa left to go drinking and returned to the apartment a few hours later. Upon his return, Smith was in the kitchen drinking cold coffee and her daughter was sleeping. After the couple resumed arguing, Ochoa pointed towards Smith's daughter's room and said that A.S. was "retarded" and "didn't even need to be alive." Smith testified that in response, she threw coffee at Ochoa. Ochoa told Smith that she better run.

At the time of the incident, the couple was a few feet from A.S.'s bedroom with Ochoa standing between Smith and the bedroom. As Smith tried to move past Ochoa and enter the bedroom, Smith testified that he wrapped his arm around her throat, lifted her off the ground, and tackled her to floor. Smith tried to get away, but Ochoa kept

3

squeezing her neck harder and harder. According to Smith, before she passed out, she looked over her shoulder and saw Ochoa smiling as she was struggling to breathe.

At trial, Smith could not recall if she had punched Ochoa before being strangled. But Smith explained that her interview statements with Detective Kevin Shireman were more complete than her trial testimony.

Officer Delgadillo testified that Smith reported to him that Ochoa strangled her and threw her down after she threw coffee at Ochoa and punched him. Detective Shireman also testified regarding his interviews with Smith. During the interviews, Smith stated that Ochoa picked up a ceramic bowl after she threw coffee at his face. Ochoa then said, "'You better [expletive] run'" and threw the bowl at Smith. Smith reported she had told Ochoa she was going to leave, punched Ochoa in the face, and then went towards her daughter's door. According to Smith, Ochoa then began strangling her.

Ochoa testified in his own defense. He asserted that he did not strangle Smith. Instead, Ochoa claimed that he restrained Smith with a bear hug after she threw coffee on him and started punching him. Ochoa testified that he held Smith around her chest until she stopped punching him. According to Ochoa, Smith later fell while sitting at the kitchen table and was calling for her inhaler. During his testimony, Ochoa conceded that Smith was smaller than him and he agreed that she possessed no weapons. During the incident, Ochoa stated he was not afraid of Smith or worried she could really hurt him.

At the conclusion of trial, the jury convicted Ochoa of aggravated battery. The jury also made a special finding that the crime was an act of domestic violence.

The State moved for an upward durational departure sentence. In a separate penalty phase, the State contended that three aggravating factors supported the imposed

sentence. The jury determined, however, that only one aggravating factor existed—that "Smith and/or her family was particularly vulnerable."

At sentencing, the district court relied on the aggravating factor found by the jury and imposed an upward durational departure sentence of 68 months in prison. Ochoa timely appeals his conviction and sentence.

SELF DEFENSE IMMUNITY RULING

For his first issue on appeal, Ochoa contends the district court erred in denying his pretrial motion for self-defense immunity from prosecution. Specifically, Ochoa argues the district court erroneously viewed the evidence presented at the immunity hearing in the light most favorable to the State.

Our court applies a bifurcated standard of review in considering a district court's decision on a motion for self-defense immunity. *State v. Hardy*, 305 Kan. 1001, Syl. ¶ 5, 390 P.3d 30 (2017). Without reweighing the evidence, we review the district court's factual findings to determine if they are supported by substantial competent evidence. The ultimate legal conclusion is then reviewed de novo. "When there are no disputed material facts, a pure question of law is presented over which an appellate court exercises unlimited review." 305 Kan. 1001, Syl. ¶ 5.

In the pretrial motion, Ochoa argued that his use of force was justified because it was objectively reasonable and subjectively perceived as necessary to defend himself from Smith's imminent use of unlawful force. The district court conducted the immunity hearing in conjunction with the preliminary hearing.

Smith's testimony was the only evidence presented at the consolidated hearing. Smith testified that after Ochoa called her daughter "retarded," she threw cold coffee at

5

him and struck him once in the chest with a closed fist. Ochoa then told Smith that she "better run" but Smith tried to go into her daughter's room.

Like her later trial testimony, Smith explained that Ochoa wrapped his arm around her neck and slammed her to the ground when she tried to enter her daughter's room. Ochoa began to tightly squeeze her neck. Smith testified that she tried to hit Ochoa with her elbows to get him off of her. But Smith was unable to breathe and the last thing she remembered was Ochoa smiling at her.

Relying on our court's decision in *State v. Hardy*, 51 Kan. App. 2d 296, 347 P.3d 222 (2015), *rev'd* 305 Kan. 1001 (2017), the district court found that it should view the evidence presented at the hearing in a light most favorable to the State. After reciting this standard, the district court found there was probable cause to believe that Ochoa acted without legally justified self-defense. As a result, the motion for self-defense immunity was denied.

Several months after Ochoa's immunity hearing, however, our Supreme Court reversed our court's ruling in *Hardy* and held the district court must weigh the evidence before it without deference to the State when considering a motion for immunity under K.S.A. 2016 Supp. 21-5231. *Hardy*, 305 Kan. at 1011.

Next, a brief review of the Kansas statute providing immunity from prosecution in cases of self-defense is in order. K.S.A. 2017 Supp. 21-5231 provides:

> "(a) A person who uses force which, subject to the provisions of K.S.A. 2017 Supp. 21-5226, and amendments thereto, is justified pursuant to K.S.A. 2017 Supp. 21-5222, 21-5223 or 21-5225, and amendments thereto, is immune from criminal prosecution and civil action for the use of such force.
> . . . .

6

"(c) A prosecutor may commence a criminal prosecution upon a determination of probable cause."

At an immunity hearing, the State has the burden to establish probable cause that the person asserting immunity was not justified in using force. *State v. Ultreras*, 296 Kan. 828, 845, 295 P.3d 1020 (2013). The district court's determination of probable cause must be based on stipulated facts or on evidence received at an evidentiary hearing. *Hardy*, 305 Kan. at 1011-12. "[T]he district court must consider the totality of the circumstances, *weigh the evidence before it without deference to the State*, and determine whether the State has carried its burden to establish probable cause that the defendant's use of force was not statutorily justified." (Emphasis added.) 305 Kan. 1001, Syl. ¶ 1.

The State candidly concedes that based on our Supreme Court's holding in *Hardy*, the district court erred when it viewed the evidence in the light most favorable to the State. On the contrary, the district court should have considered the evidence without deference to the State. That said, the State argues that any error by the district court in applying the wrong standard was harmless.

The district court's application of an erroneous standard when denying a pretrial motion for self-defense immunity may be harmless error. *Ultreras*, 296 Kan. at 845. Because such an error affects a defendant's statutory rights, the statutory harmless error test of K.S.A. 2017 Supp. 60-261 and K.S.A. 60-2105 applies. Under this standard, "an appellate court must be persuaded there is no reasonable probability the error affected the outcome of the trial in order to find the error harmless." 296 Kan. at 845. The party benefiting from the error, in this case the State, bears the burden of proving the error was harmless. *State v. Logsdon*, 304 Kan. 3, 39, 371 P.3d 836 (2016).

Our Supreme Court in *Ultreras* determined that a district court's error in applying the incorrect legal standard at the immunity hearing was harmless. 296 Kan. at 845-47.

7

The *Ultreras* court reasoned that there was no reasonable possibility the error affected the outcome of the trial, in part, because self-defense was fully litigated at the trial and the jury found the defendant guilty beyond a reasonable doubt. 296 Kan. at 846. The court also found there was no reason why the jury did not appropriately consider self-defense and there was nothing offered during the proceedings that undermined the district court's finding of probable cause. 296 Kan. at 846.

As in *Ultreras*, in this case the issue of self-defense was fully litigated at trial and the jury considered the evidence presented by both parties. Ochoa does not suggest the pretrial ruling limited his ability to present a claim of self-defense at trial. Similarly, he does not argue the jury failed to appropriately consider whether he was justified in using force. Yet, the jury rejected Ochoa's self-defense argument and found him guilty of aggravated battery beyond a reasonable doubt.

Ochoa distinguishes this case from *Ultreras*, claiming the evidence presented at the immunity hearing was substantially different from the evidence presented at trial. As a result, he argues the jury verdict provides no guidance on the effect of the error on the district court's ruling at the hearing. Ochoa then asserts that if the district court had not viewed the evidence in a light most favorable to the State, it would have granted him immunity from prosecution, avoiding the resultant trial and guilty verdict.

Ochoa's arguments are not persuasive. At the hearing, the district court was not required to weigh conflicting evidence or resolve disputed facts. Smith's testimony was the only evidence presented. Although the district court said it should view the evidence in a light most favorable to the State, applying this standard would have no effect because there was no conflicting facts for the district court to resolve. As a result, the district court ultimately considered the totality of the circumstances without resolving conflicts in favor of the State when finding that Ochoa was not entitled to immunity. See *State v.*

8

*Younger*, No. 116,441, 2018 WL 911414, at *6-7 (Kan. App. 2018) (unpublished opinion).

Moreover, the undisputed evidence at the immunity hearing supports the district court's determination that the State carried its burden to establish probable cause that Ochoa's use of force was not statutorily justified.

"Probable cause at a preliminary examination requires evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief in the defendant's guilt." *State v. Berg*, 270 Kan. 237, 238, 13 P.3d 914 (2000). A person using self-defense is only justified in using such force "*to the extent* it appears to such person and such person reasonably believes that such use of force is *necessary to defend such person* or a third person against such other's imminent use of unlawful force." (Emphases added.) K.S.A. 2017 Supp. 21-5222(a). "[I]t is well settled that a person cannot use greater force than is reasonably necessary to resist the attack." *State v. Marks*, 226 Kan. 704, 712, 602 P.2d 1344 (1979).

According to Smith's uncontroverted testimony at the immunity hearing, she initiated physical contact when she threw coffee at Ochoa and punched his chest once. Ochoa—who is bigger and stronger than Smith—responded by wrapping his arm around her neck, tightly squeezing it, and slamming her to the ground. Smith could not breathe and passed out. Upon our review, without giving deference to the State, this evidence was sufficient for the district court to conclude that the State carried its burden to establish probable cause that Ochoa's use of force was not statutorily justified.

Accordingly, for all of these reasons, we conclude there is no reasonable probability that the district court's error in applying the wrong legal standard affected the outcome of the immunity hearing. Moreover, there is no reasonable possibility that the error affected the outcome of Ochoa's jury trial. The district court's error was harmless.

9

Ochoa next contends the State committed prosecutorial error during voir dire and closing arguments in the guilt phase and penalty phase of trial. He asserts this prosecutorial error prejudiced his right to a fair trial.

Ochoa concedes that he did not object at trial to the prosecutor's comments he now claims were erroneous. That said, claims of prosecutorial error based on comments made during voir dire, opening statements, or closing arguments will be reviewed on appeal even without a contemporaneous objection at trial. *State v. Anderson*, 294 Kan. 450, 461, 276 P.3d 200 (2012). As a result, Ochoa's claim may be considered for the first time on appeal.

To evaluate claims of prosecutorial error, appellate courts use a two-step process: First, determine whether any error occurred and, if so, determine whether there was prejudice. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016). In determining whether prosecutorial error occurred, this court "must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial." 305 Kan. at 109.

If error is found, our court moves to the second step and determines whether the error prejudiced the defendant's due process rights to a fair trial. Evidence of prejudice is evaluated under the traditional constitutional harmless error inquiry enumerated in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). *Sherman*, 305 Kan. at 109. As our Supreme Court has explained:

"In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the

10

trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.'" 305 Kan. at 109 (quoting *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 [2011]).

Each of Ochoa's prosecutorial error claims are addressed individually.

*Voir Dire Questions*

Ochoa contends the prosecutor committed error during voir dire by stating that the case involved domestic violence. Ochoa claims the jury was to decide whether he committed an act of domestic violence and the prosecutor's statements distracted the jury from its role as the fact-finder.

During voir dire, the prosecutor explained:

"Now, as judge said, that this is an aggravated battery case, *but it also occurred within a relationship, so it would be under domestic battery*. Now, I know that's kind of a difficult subject for everybody to talk about and it's kind of uncomfortable and you're going to hear from witnesses from the stand. Does the fact that it's a domestic violence case change anybody's mind about being fair and impartial?" (Emphasis added.)

Ochoa challenges the italicized portion of the above quote.

The prosecutor also asked the potential jurors about their understanding of domestic violence. In particular, the prosecutor inquired whether any of the potential jurors would be biased against Ochoa or Smith because they were unmarried but living together or whether they believed the State should not become involved in domestic relationships.

11

The purpose of voir dire is to enable the parties to select jurors who are competent and without bias, prejudice, or partiality. In general, the nature and scope of the voir dire examination is left to the sound discretion of the trial court. However, in deciding whether the trial court has taken sufficient measures to ensure that the case is tried by an impartial jury free from outside influences, appellate courts have the duty to make an independent evaluation of the circumstances. *State v. Robinson*, 306 Kan. 431, 444, 394 P.3d 868 (2017).

A prosecutor may not divert the jury's attention from its role as the fact-finder. *State v. Stimec*, 297 Kan. 126, 128, 298 P.3d 354 (2013). Quoting the ABA Standards for Criminal Justice, our Supreme Court has noted the "'[t]reatment of legal points in the course of voir dire examination should be strictly confined to those inquiries bearing on possible bias in relation to the issues of the case.'" *State v. Simmons*, 292 Kan. 406, 412, 254 P.3d 94 (2011).

Ochoa is correct that the jury was tasked with determining whether his crime was an act of domestic violence. The prosecutor did not, however, divert the jury's attention from its role as the fact-finder. Instead, the jury was instructed by the district court that an act of domestic violence entails a specific definition and is only satisfied when certain conditions are met. In this way, the jury was fully informed that it was its duty to decide whether the crime was, in fact, domestic violence. From the State's perspective, domestic violence was an important issue in the case. Given this theory of prosecution, the prosecutor was permitted to probe for bias and partiality. The State's colloquy with potential jurors about domestic violence did not constitute prosecutorial error.

*Guilt-phase Closing Argument*

Ochoa asserts that during closing argument in the guilt phase, the prosecutor mischaracterized the State's medical expert's testimony and improperly commented on facts unsupported by the evidence.

Doctor Erik Mitchell, a forensic pathologist who examines the causes of injuries on the living and the dead, testified that he has performed autopsies on strangulation victims. Dr. Mitchell agreed that, in some of these autopsies, there were no outward signs of strangulation. Dr. Mitchell explained that, when a living person sustains an internal injury, the injury may present itself externally several days later—as with a bruise. However, when someone is fatally injured, although an internal injury may be observed on autopsy, an external injury may not be present. Moreover, despite strangulation being the known cause of death, on occasion an autopsy may not reveal external or internal evidence of strangulation.

As an expert for the State, Dr. Mitchell testified that he had examined police reports, photographs, medical records, and other information about the case. When asked if there were "signs and symptoms" indicating that Smith was strangled, Dr. Mitchell said he was unable to see any outward anatomical signs. However, Dr. Mitchell testified:

> "[T]he description of loss of consciousness, of application of force to the neck . . . is consistent with sufficient application of force in the description to cause a lack of blood flow to the brain. She is described as being confused after the fact. That certainly could be—could be from strangulation. I cannot independently prove or disprove that through any anatomic means, but it is described in the record."

Dr. Mitchell testified that while it was possible that Smith sustained internal injuries as a result of strangulation, "There's no way for me to know."

13

In his closing argument, Ochoa stressed that Dr. Mitchell found no anatomical signs of strangulation. In rebuttal argument, the prosecutor commented:

"[Defense counsel] has just gone over a few things with you. A lot about our medical expert, a lot about how he couldn't give you a conclusion that this was a strangulation. *She isn't dead, ladies and gentlemen. He couldn't do an autopsy on her, so he cannot give you a definitive yes or no to a medical degree. He did say his findings were that her signs and symptoms were consistent with strangulation. Didn't say anything about them not being. Said they were consistent, but he could not give a definite yes or no whether it was strangulation.*" (Emphasis added.)

Ochoa claims the italicized comment amounted to prosecutorial error. First, he argues the State mistakenly implied that "Dr. Mitchell certainly would have uncovered medical evidence of a strangulation had he done an autopsy." Ochoa then asserts the State improperly suggested that Dr. Mitchell found that Smith's symptoms were consistent with strangulation.

"[W]hen a prosecutor refers to facts not in evidence, such statements tend to make the prosecutor his or her own witness who offers unsworn testimony not subject to cross-examination." *State v. Morris*, 40 Kan. App. 2d 769, 791-92, 196 P.3d 422 (2008).

With regard to the first argument, Ochoa claims error because, contrary to the prosecutor's comment, Dr. Mitchell's testimony allowed for instances when strangulation does not result in either internal or external injuries. But this remark is of little consequence considering that Smith obviously did not die and, as a result, no autopsy was conducted.

Even assuming error, Ochoa has not shown any prejudice. The gist of the prosecutor's argument that Dr. Mitchell was unable to state that there were anatomical signs of strangulation was accurate—and supported Ochoa's defense that no strangulation

14

occurred. The district court also instructed the jury to disregard any statements by counsel unsupported by the evidence. Moreover, there was no contemporaneous objection to the prosecutor's brief comment. This omission suggests that any error or prejudice was not apparent to defense counsel. See *State v. Breedlove*, 295 Kan. 481, 496, 286 P.3d 1123 (2012) (noting that the presence or absence of an objection may figure into our analysis of the alleged misconduct, citing *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 [2009]).

With regard to Ochoa's second argument, the State did not mischaracterize evidence by stating that Dr. Mitchell found Smith's symptoms consistent with strangulation. In fact, the physician testified that Smith's description of her symptoms was consistent with strangulation. The prosecutor's argument in this respect is supported by the evidence and did not amount to prosecutorial error.

*Penalty-phase Closing Argument*

Ochoa next argues that the State committed prosecutorial error in the penalty phase of the trial. Ochoa reasons that the State misstated the evidence about the possible housing options that Smith had available other than living with Ochoa.

Given our conclusion later in this opinion that the district court erred in providing the jury with an instruction regarding the vulnerability of Smith and her family, this particular issue is moot.

FAILURE TO INSTRUCT ON LESSER INCLUDED OFFENSES

Ochoa next contends the district court erred by failing to instruct the jury on reckless aggravated battery and domestic battery as lesser included offenses of aggravated battery.

Ochoa was charged with and convicted of alternative counts of severity level 7 aggravated battery under K.S.A. 2016 Supp. 21-5413(b)(1)(B) and (b)(1)(C). Aggravated battery under K.S.A. 2016 Supp. 21-5413(b)(1)(B) is defined as "knowingly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." The alternative count of aggravated battery under K.S.A. 2016 Supp. 21-5413(b)(1)(C) is defined as "knowingly causing physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted."

In addition to the alternative counts of aggravated battery, the district court instructed the jury on the lesser included offense of simple battery. But on appeal, Ochoa argues the district court erred by failing to sua sponte instruct the jury on two additional lesser included offenses of reckless aggravated battery and domestic battery.

A brief summary of our standard of review is in order:

> "When reviewing the failure to give a lesser included instruction, (1) first, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless." *State v. Soto*, 301 Kan. 969, Syl. ¶ 9, 349 P.3d 1256 (2015).

Whether a party has preserved a jury instruction issue for appeal affects the appellate court's reversibility inquiry at the third step. *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018); see K.S.A. 2017 Supp. 22-3414(3).

16

Ochoa acknowledges that in the district court he did not request lesser included instructions on either reckless aggravated battery or domestic battery. As a result, our court evaluates Ochoa's claims under the clearly erroneous standard. See K.S.A. 2017 Supp. 22-3414(3). To establish clear error, Ochoa must firmly convince our court that giving the lesser included offense instructions would have made a difference in the verdict. *State v. Cooper*, 303 Kan. 764, 771, 366 P.3d 232 (2016). We will review the two lesser included offense instructions separately.

*Reckless Aggravated Battery*

Ochoa asserts the jury should have received instructions on the lesser included offense of reckless aggravated battery. Reckless aggravated battery under K.S.A. 2016 Supp. 21-5413(b)(2)(B) is defined as "recklessly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." This offense is a severity level 8 person felony. K.S.A. 2016 Supp. 21-5413(g)(2)(D).

To determine whether the district court erred, our court examines whether a reckless aggravated battery instruction was legally and factually appropriate, using an unlimited review of the entire record. *McLinn*, 307 Kan. at 318. At the outset, the parties agree that a lesser included offense instruction on reckless aggravated battery was legally appropriate. See *State v. Green*, 55 Kan. App. 2d 595, 612, 419 P.3d 83 (2018). However, "even if the instruction is legally appropriate when viewed in isolation, it must be supported by the particular facts of the case at bar." *State v. Plummer*, 295 Kan. 156, 161, 283 P.3d 202 (2012).

The parties dispute whether a reckless aggravated battery instruction was factually appropriate. Lesser included offense instructions are factually appropriate if there exists sufficient evidence, viewed in the light most favorable to the defendant, to support the

17

instruction. *State v. Perez*, 306 Kan. 655, 667-68, 396 P.3d 78 (2017); K.S.A. 2017 Supp. 22-3414(3). A court must instruct on a lesser included offense only if (1) the evidence, when viewed in the light most favorable to the defendant's theory, would justify a jury verdict according to that theory and (2) the evidence at trial does not exclude a theory of guilt on the lesser included offense. *State v. Simmons*, 282 Kan. 728, 741, 148 P.3d 525 (2006).

The relevant distinction between the charged crime and severity level 8 reckless aggravated battery is the culpable mental state required to satisfy the respective crimes. The charged crime of severity level 7 aggravated battery requires the defendant to act *knowingly*, while severity level 8 reckless aggravated battery requires proof that the defendant acted *recklessly*. K.S.A. 2016 Supp. 21-5413(b)(1)(B), (b)(2)(B). A person acts recklessly when that person "consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." K.S.A. 2016 Supp. 21-5202(j).

Ochoa claims his testimony supported a lesser included instruction on reckless aggravated battery. During trial, Ochoa denied strangling Smith until she lost consciousness. On the contrary, Ochoa testified that he gave Smith a bear hug until she stopped hitting him and that she later passed out while asking for her inhaler. Based on his version of the facts, Ochoa asserts the jury could have found that he recklessly caused bodily harm by consciously disregarding the risk that his manner of touching Smith would cause bodily harm. We disagree.

Even in a light most favorable to him, the evidence shows that Ochoa acted in a knowing or intentional way, not in a reckless manner. "Reckless conduct has always meant an unintentional act. The fact that the defendant may not have intended the precise harm or result that occurred does not make the act any less intentional and certainly does

18

not demote the behavior to mere reckless conduct." *State v. Frazier*, No. 112,368, 2016 WL 1545628, at *9 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. 1323 (2017). Given his version of the facts, Ochoa purposefully made physical contact with Smith to restrain her from hitting him. His actions were not reckless.

Moreover, under Ochoa's version of the facts, there was not a substantial and unjustifiable risk that a bear hug would result in asphyxiation, loss of consciousness, and hospitalization. Moreover, a bear hug would not be a gross deviation from a reasonable standard of care. Finally, Ochoa's defense was not that he acted recklessly, but that any contact with Smith was justified because Ochoa purposely engaged in self-defense.

The evidence, when viewed in the light most favorable to the defendant, did not justify a verdict of reckless aggravated battery. As a result, a lesser included instruction on reckless aggravated battery was not factually appropriate and the district court did not err in failing to give it.

*Domestic Battery*

Ochoa also claims the district court erred by failing to instruct the jury on domestic battery as a lesser included offense of aggravated battery. Domestic battery under K.S.A. 2016 Supp. 21-5414(a)(1) is defined as "[k]nowingly or recklessly causing bodily harm by a family or household member against a family or household member."

Upon our review, we first examine whether a domestic battery instruction was legally appropriate. *McLinn*, 307 Kan. at 318. In considering the legal appropriateness of an instruction, "appellate review is unlimited, as with all questions of law." *Plummer*, 295 Kan. at 161. A lesser included offense instruction is legally appropriate if the lesser crime is an included offense of the charged crime. 295 Kan. at 161.

19

This matter presents the same controlling issue our court addressed in *State v. Carter*, 54 Kan. App. 2d 34, 395 P.3d 458, *rev. denied* 307 Kan. 989 (2017). In *Carter*, we held that domestic battery is not, as a matter of law, a lesser included offense of aggravated battery. 54 Kan. App. 2d 34, Syl. ¶ 2.

Under K.S.A. 2017 Supp. 21-5109(b), a lesser included crime is:

"(1) A lesser degree of the same crime, except that there are no lesser degrees of murder in the first degree under subsection (a)(2) of K.S.A. 2017 Supp. 21-5402, and amendments thereto;
"(2) a crime where all elements of the lesser crime are identical to some of the elements of the crime charged;
"(3) an attempt to commit the crime charged; or
"(4) an attempt to commit a crime defined under paragraph (1) or (2)."

Neither party suggests that either K.S.A. 2017 Supp. 21-5109(b)(3) or (b)(4) apply to this case. As a result, we will consider whether domestic battery is a lesser included offense under either K.S.A. 2017 Supp. 21-5109(b)(1) or (b)(2).

First, domestic battery is not a lesser degree of the same crime as aggravated battery. Of note, domestic battery is not explicitly listed as one of the lesser degrees of aggravated battery in K.S.A. 2016 Supp. 21-5413, but is listed as a separate crime statutorily defined in K.S.A. 2016 Supp. 21-5414. Our court in *State v. Chavez*, No. 108,955, 2014 WL 1795760, at *5 (Kan. App. 2014) (unpublished opinion), provided a persuasive analysis explaining why domestic battery is not a lesser degree of the same crime as aggravated battery. In *Chavez*, our court distinguished the gravamen of prohibited conduct between aggravated/simple battery and domestic battery, concluding:

"Aggravated battery and simple battery attempt to regulate conduct among members of the general public by criminalizing and punishing specified forms of inappropriate

20

physical contact. The degree of the offense is dictated by the amount of force and whether a deadly weapon is used. Domestic battery, however, is a materially different offense, the purpose of which is to deter one adult member of a household from chronically abusing another adult in the same household." 2014 WL 1795760, at *5.

Given the differences between the two crimes, domestic battery is not a lesser degree of the same crime as aggravated battery. As a result, domestic battery is not a lesser included crime of aggravated battery under subsection (b)(1) of K.S.A. 2017 Supp. 21-5109.

Moreover, domestic battery is not a lesser included crime of aggravated battery under K.S.A. 2017 Supp. 21-5109(b)(2). Under this subsection, "a crime where all elements of the lesser crime are identical to some of the elements of the crime charged" is a lesser included offense of the charged crime. K.S.A. 2017 Supp. 21-5109(b)(2). The appellate court "applies a strict elements test and is limited to a comparison of the abstract elements of the offenses charged." *State v. Alderete*, 285 Kan. 359, Syl. ¶ 2, 172 P.3d 27 (2007). Applying this test, the court will not consider "the factual nuances of a specific case as they may bear on satisfaction of the statutory elements of both crimes under examination." 285 Kan. 359, Syl. ¶ 2.

The State charged Ochoa with aggravated battery under K.S.A. 2016 Supp. 21-5413(b)(1)(B) and (b)(1)(C), requiring the State to prove that he caused "bodily harm" or "physical contact" to Smith "in any manner whereby great bodily harm, disfigurement or death can be inflicted." But domestic battery requires proof of the element that the bodily harm or physical contact was caused by "a family or household member against a family or household member." K.S.A. 2016 Supp. 21-5414(a). This element is unique to the offense of domestic battery and is not found in the charged crime of aggravated battery. Because all of the elements of domestic battery are not identical to some elements of the

21

crimes charged, domestic battery is not a lesser included offense of aggravated battery under K.S.A. 2017 Supp. 21-5109(b)(2). See *Carter*, 54 Kan. App. 2d at 43.

On appeal, Ochoa argues that *Carter* was wrongly decided because, as in this case, the State asked the jury to designate the crime as a domestic violence offense. Ochoa claims if an aggravated battery is charged as a domestic violence offense, all the elements of domestic violence are present for the jury's consideration. See K.S.A. 2017 Supp. 22-4616(a).

To be a lesser included crime under K.S.A. 2017 Supp. 21-5109(b)(2), all the elements of domestic battery must be "identical to some of the elements of *the crime charged*." (Emphasis added.) This court is limited to comparing the elements of the offenses charged and may not consider the factual nuances of the specific case. *Alderete*, 285 Kan. 359, Syl. ¶ 2.

Here, the charged crime was aggravated battery. Unlike domestic battery, aggravated battery does not contain the element that bodily harm or physical contact was caused by "a family or household member against a family or household member." K.S.A. 2016 Supp. 21-5414(a). Although the domestic battery designation in this case necessitated the jury to determine whether the crime was a domestic violence offense for sentencing purposes, the elements of the crime charged remained the same. Since our court is limited to comparing the elements of the crime charged, the factual finding of domestic violence by the jury had no effect on whether domestic battery is a lesser included offense of aggravated battery.

Finally, it should be noted that the jury was given the option of convicting Ochoa of the lesser included offense of battery, yet it convicted him of the greater crime. Battery and domestic battery share similar elements except that domestic battery requires the additional element of occurring in a domestic context. Given that the jury declined to find

Ochoa guilty of the similar offense of simple battery, he has failed to meet the burden of proving clear error, that is, to convince our court that giving the lesser included offense instruction of domestic battery would have made a difference in the verdict. See *Cooper*, 303 Kan. at 771.

In summary, domestic battery is not a lesser included offense of aggravated battery under any subsection of K.S.A. 2017 Supp. 21-5109(b). A domestic battery instruction, therefore, was not legally appropriate. Accordingly, the district court did not err by failing to instruct the jury on the crime of domestic battery as a lesser included offense of aggravated battery.

CUMULATIVE ERROR DURING GUILT PHASE OF TRIAL

Ochoa contends his conviction must be reversed because cumulative trial errors denied him a fair trial. Although Ochoa includes alleged penalty-phase errors in this analysis, our court considers only errors identified during the guilt-phase proceeding to determine whether cumulative error requires reversal of the guilt-phase convictions. See *State v. Thurber*, 308 Kan. 140, 213-14, 420 P.3d 389 (2018); *State v. Cheever*, 306 Kan. 760, 798-800, 402 P.3d 1126, *cert. denied* 138 S. Ct. 560 (2017) (noting the different frameworks in analyzing guilt-phase and penalty-phase cumulative error).

Moreover, any penalty-phase errors had no impact on Ochoa's conviction of aggravated battery. The jury found Ochoa guilty of aggravated battery before the penalty phase began. As a result, we decline to consider any penalty-phase errors when determining whether cumulative error requires the aggravated battery conviction to be reversed.

"For errors to have a cumulative effect that transcends the effect of the individual errors, there must have been more than one individual error." *State v. Cruz*, 297 Kan.

23

1048, 1074, 307 P.3d 199 (2013). In the present case, we have not identified any error which occurred during the guilt phase of trial. Given this determination, there can be no valid claim of cumulative error.

UPWARD DURATIONAL DEPARTURE SENTENCE

For his final issue, Ochoa contends the district court erred during the penalty phase when it instructed the jury on possible aggravating factors that may support an upward durational departure sentence. Specifically, Ochoa argues that instructing the jury to determine whether "Cheyenne Smith and/or her family was particularly vulnerable" as a basis for an upward departure was legally inappropriate.

Under K.S.A. 2017 Supp. 21-6815(a), the sentencing judge must impose the presumptive sentencing guidelines sentence unless the court finds "substantial and compelling reasons to impose a departure sentence." K.S.A. 2017 Supp. 21-6815(c) provides nonexclusive lists of both mitigating and aggravating factors that may be considered in determining whether substantial and compelling reasons to depart exist. However, other than a prior conviction, any fact that will be used to increase the sentence beyond the statutory maximum—any fact used for an upward durational departure—must be submitted to a jury and proved beyond a reasonable doubt. K.S.A. 2017 Supp. 21-6815(b).

Before trial, the State moved for an upward durational departure sentence in the event of a guilty verdict and specified three aggravating factors that it proposed to submit to the jury. The district court sustained the motion with regard to the following factors:

(1) "Cheyenne Smith and/or her family was particularly vulnerable";
(2) "The defendant's conduct manifests excessive brutality not normally present in this offense"; and

24

(3) "A fiduciary relationship existed between Cheyenne Smith and the defendant."

At the start of the penalty phase, the district court conducted an instructions conference. At this conference, Ochoa objected to submission of the vulnerability factor, arguing that it was improper to include Smith's family in the instruction. The State responded: "[I]t's about [Smith's] daughter and the fact that her daughter has nobody else besides her and . . . had [Smith] died, the child would have had nowhere to go and would have had to be put in the system at that point because she didn't have a parent." The district judge agreed with the State and overruled Ochoa's objection, reasoning that "[w]e're talking about [Smith's] relationship with her child and that being a factor in this particular set of scenarios, so I think that's appropriate."

After hearing the evidence, the jury found the only applicable aggravating factor proven was that "Cheyenne Smith and/or her family was particularly vulnerable." On appeal, Ochoa reprises his argument that this aggravating factor was improper because it included Smith's family.

Our standard of review provides:

"When analyzing jury instruction issues, an appellate court follows a three-step process by: (1) Determining whether the appellate court can or should review the issue, *i.e.*, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits to determine whether error occurred; and (3) assessing whether the error requires reversal. [Citation omitted.]" *State v. Louis*, 305 Kan. 453, 457, 384 P.3d 1 (2016).

As to the first step, Ochoa's objection is preserved for appellate review. See K.S.A. 2017 Supp. 22-3414(3); *State v. Brammer*, 301 Kan. 333, 341, 343 P.3d 75 (2015) ("[A]n attorney must object on the record to the giving or omission of an instruction before the

25

jury retires to consider the verdict, with counsel clearly stating the reason for the objection.").

As to the second step, when reviewing the merits of this issue our court exercises unlimited review to determine whether the instruction was legally and factually appropriate. *Louis*, 305 Kan. at 457. In particular, we exercise unlimited review when determining whether a particular aggravating factor can ever, as a matter of law, be substantial and compelling in any case. *State v. Reed*, 302 Kan. 227, 249, 352 P.3d 530 (2015).

K.S.A. 2017 Supp. 21-6815(c)(2) contains a nonexclusive list of eight aggravating factors that may be considered in determining whether to depart from a presumptive sentence. The listed potential aggravating factors include: "The victim was particularly vulnerable due to age, infirmity, or reduced physical or mental capacity which was known or should have been known to the offender." K.S.A. 2017 Supp. 21-6815(c)(2)(A).

Like the vulnerability instruction submitted in this case, the aggravating factor listed in K.S.A. 2017 Supp. 21-6815(c)(2)(A) also relates to vulnerability. Our court examined this statutory factor in *State v. Neri*, 32 Kan. App. 2d 1131, 95 P.3d 121 (2004).

The defendant in *Neri* stole and forged several checks from a youth baseball program. At sentencing, the district court imposed an upward departure, finding the children in the baseball program were victims and particularly vulnerable because of their age. In reversing the sentence, our court explained: "The essence of the vulnerable victim aggravating sentencing factor is that the vulnerability somehow facilitates commission of the crime." 32 Kan. App. 2d at 1134. As a result, since the money was stolen from an organization administered by adults, the young age of the participants was

26

not a substantial and compelling reason for an upward departure. 32 Kan. App. 2d at 1134-35.

In this case, we are convinced the district court erred by giving the modified vulnerability instruction. Two reasons compel this conclusion. First, this instruction is legally inappropriate because it provided in the alternative that either Smith *or her family* were particularly vulnerable as a consequence of Ochoa's criminal wrongdoing. But the vulnerability of a third party to a crime falls outside the ambit of the statutory vulnerability factor listed in K.S.A. 2017 Supp. 21-6815(c)(2)(A). This vulnerability factor focuses only on the victim of the crime and does not include others. Here, the State charged Ochoa with aggravated battery against Smith. No charges were filed for any crime allegedly committed against A.S. or other family members. In short, Smith's family was not "the victim" as contemplated by K.S.A. 2017 Supp. 21-6815(c)(2)(A).

Second, the statutory vulnerability factor contemplates that the vulnerability somehow facilitated the defendant's commission of the crime. Yet, the instruction allowed the jury to consider A.S.'s vulnerability regardless of its effect on Smith or the facilitation of the crime. For example, many cases about the vulnerability of victims involve violent crimes against elderly persons. Because the victims were less capable of fighting back against the perpetrator, the victim's age directly facilitated the defendant's crime. See *Neri*, 32 Kan. App. 2d at 1134. In this case, the vulnerability instruction was not congruent with K.S.A. 2017 Supp. 21-6815(c)(2)(A) because it was not limited to how Smith's vulnerability facilitated Ochoa's aggravated battery.

Of course, sentencing courts may use other factors when imposing a departure sentence. *Reed*, 302 Kan. at 250. Nonstatutory factors are legally appropriate reasons to depart if they are consistent with the intent and principles underlying the sentencing guidelines. *State v. Bird*, 298 Kan. 393, 397, 312 P.3d 1265 (2013). The recognized legislative purposes of the guidelines are to reduce prison overcrowding, protect public

27

safety, and standardize sentences so similarly situated offenders are treated similarly. 298 Kan. at 399.

The vulnerability of Smith's family is also not a legally appropriate nonstatutory aggravating factor. In considering the intent of the guidelines, it is telling that the Legislature limited the statutory vulnerability factor to crime victims who are vulnerable because of age, infirmity, or reduced physical or mental capacity. In this regard, the remaining aggravating factors in K.S.A. 2017 Supp. 21-6815(c)(2) similarly refer to only the defendant or the victim. No listed aggravating factor considers third parties to the crime. Moreover, the listed aggravating factors focus on how the defendant took advantage of or was otherwise motivated by the victim's characteristics. Yet, in this case, the jury instruction allowed for the mere happenstance of a third party's vulnerability to be an aggravating factor, despite whether Ochoa took advantage of or was motived by that vulnerability. This does not reflect the same culpability that the listed factors in K.S.A. 2017 Supp. 21-6815(c)(2) require.

Finally, using the vulnerability of the victim's family to increase a sentence is not consistent with the legislative purpose of the guidelines to standardize sentences. Enhancing a defendant's sentence solely because the victim had a young child, elderly parent, or sibling with a disability would result in disparate sentences for other defendants who committed similar crimes against similar victims who had different family structures. Such a result is inconsistent with the purpose of the standardized guidelines.

In summary, the particular vulnerability of a victim's family is not a valid legal basis to depart from a presumptive sentence. Since the jury instruction allowed for the vulnerability of Smith's family, in itself, to be an aggravating factor, the instruction was legally inappropriate. Accordingly, the district court erred as a matter of law.

28

Was this error harmless? The parties agree that any error is reversible only if there is a reasonable probability that it affected the outcome of the sentencing in light of the entire record. See *Louis*, 305 Kan. at 457. Of the three aggravating factors given, the jury found only that Smith and/or her family was particularly vulnerable. As Ochoa argues, had the jury not been erroneously asked to determine whether Smith's family was particularly vulnerable, there is a reasonable probability the jury would not have found any aggravating factor existed.

Of note, the jury was instructed as to one factor—the existence of a fiduciary relationship between Smith and Ochoa—which was defined as "the placement of trust or confidence in another, *vulnerability* or dependence on another, substantial disparity in knowledge, and the ability to exert influence." (Emphasis added.) The jury concluded there was not a sufficient showing that a fiduciary relationship existed between Ochoa and Smith. Given that vulnerability was a component of the definition of fiduciary relationship, this suggests the jury was not persuaded that Smith was particularly vulnerable under the facts of the case. On the other hand, during trial, Smith testified that Ochoa yelled at her two-year-old daughter and would drag her by her arm. Smith also described several incidents involving herself and Ochoa where A.S. was threatened or otherwise present. Given the jury's verdict as to the lack of a fiduciary relationship between Ochoa and Smith, and the trial evidence regarding Ochoa's misbehavior involving Smith's young daughter, we conclude there is a reasonable probability that the instructional error affected the jury's conclusion that the particularly vulnerable factor only applied to A.S. As a result, the error is not harmless.

The jury's vulnerability finding is reversed, the sentence is vacated, and the case is remanded for resentencing. See *State v. Pritchard*, No. 100,416, 2010 WL 1687849, at *9 (Kan. App. 2010) (unpublished opinion) (the only appropriate remedy for improperly admitting expert testimony to support an excessive brutality aggravating factor is to strike the jury's finding of excessive brutality and remand for resentencing).

29

Affirmed in part, reversed in part, sentence vacated, and case remanded with directions.

* * *

ATCHESON, J., concurring: I concur in both the decision to affirm Defendant Shawn Eric Ochoa's conviction for aggravated battery and the decision to reverse the ground for imposing an upward departure sentence. But I do not fully share the majority's approach in getting to those results. I mention specifically only one of the points of difference: The nature of an act that may constitute reckless aggravated battery.

With the change in the definitions of criminal intent made as part of the recodification of the criminal code, an intentional or deliberate act may legally support a charge of reckless aggravated battery. See K.S.A. 2017 Supp. 21-5202(j) (defining "recklessly"). The act itself need not be reckless or careless. So the difference between "knowingly" committing an aggravated battery and "recklessly" committing one depends primarily on the defendant's understanding or appreciation of the resulting harm. I incorporate my observations in *State v. Frazier*, No. 112,368, 2016 WL 1545628, at *16-17 (Kan. App. 2016) (unpublished opinion) (Atcheson, J., dissenting), *rev. denied* 306 Kan. 1323 (2017), and in particular:

> "[*] Pertinent here, criminal defendants act 'knowingly' when they are 'aware [their] conduct is reasonably certain to cause the result.' K.S.A. 2011 Supp. 21-5202(i). Criminal defendants act 'recklessly' when they 'consciously disregard[] a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.' K.S.A. 2011 Supp. 21-5202(j). The definitions focus on a defendant's state of mind regarding an appreciation of the consequences that may result from the charged conduct. Whether the conduct is itself deliberate rather than merely careless is neither central to nor determinative of the requisite state of mind." 2016 WL 1545628, at *16.

I agree Ochoa cannot establish clear error in the jury instructions on aggravated battery or really any error at all. Given the accounts of the incident, there was no factual basis for instructing on reckless aggravated battery. Cheyenne Smith described Ochoa strangling her into unconsciousness—strong evidence he knew and appreciated the result of his actions. Conversely, Ochoa outlined an entirely different scenario in which he simply bear-hugged Smith without impairing her breathing in any way. According to Ochoa, Smith passed out later as she was sitting on a chair. Neither account was consistent with a reckless aggravated battery. The district court had no obligation to instruct the jury based on some phantom version of events without support in the evidence.